**23-1887**

# United States Court of Appeals
# For the Federal Circuit

## ACUFLOOR LLC,

Plaintiff-Appellant,

## v.

## EVENTILE, INC., FORPAC, LLC

*Defendants-Appellees.*

*Appeal from the United States District Court for the Middle District of Florida*
*No. 2:21-cv-00802-SPC-KCD, Judge Sheri Polster Chappell*

## APPELLEE-DEFENDANT EVENTILE, INC.'S RESPONSE BRIEF

Perry S. Clegg
**JOHNSON & MARTIN, P.A.**
50 W. Broadway, Suite 900
Salt Lake City, UT  84101
(801) 783-3200

March 22, 2024

*Attorney for Defendant-Appellee*
*EvenTile, Inc.*

**Exemplary Patent Claims Illustrative of the Issues**

**Fed. Cir. R. 32(a)(3)**

U.S. Patent No. 10,513,857

10. A tile leveling device comprising:

a body defining an open window;

an I-shaped base orthogonally coupled to the body, the I-shaped base having spaced first, second, third, and fourth bars extending transversely from the body, the spaced first and second bars extending to the front and outward of the body and the spaced third and fourth bars extending to the rear and outward of the body;

an I-shaped base to body coupling including a frangible breakaway section, the I-shaped base and body being integral prior to frangible separation, the frangible breakaway section, upon breaking, frangibly separating the body from the I-shaped base;

a first notch formed between the first and second bars;

a second notch formed between the third and fourth bars;

a first tile over the first bar, the first tile having a first surface opposite a second surface, the first tile having a first corner over the first notch, the first corner having contact with mortar at the first notch with edge-to-subfloor contact of first corner-to-mortar-to-subfloor at the first notch, wherein the first surface faces the first bar and the second surface is farther from the first bar than the first surface;

a second tile over the second bar, the second tile having a third surface opposite a fourth surface, the second tile having a second corner over the first notch, the second corner having contact with mortar at the first notch with edge-to-sub floor contact of second corner-to-mortar-to-subfloor at the first notch, wherein the third surface faces the second bar and the fourth surface is farther from the second bar than the third surface; and

the frangible breakaway section being located between the first and second surfaces of the first tile and the third and fourth surfaces of the second tile.

U.S. Patent No. 10,704,274

5.  A tile leveling device comprising:

a body defining an open window;
a base orthogonally coupled to the body, the base extending to the front of the body and the base extending to the rear of the body;
a base to body coupling including a frangible breakaway section, the base and body being integral prior to frangible separation, the frangible breakaway section, upon breaking, frangibly separating the body from the base;
a first notch formed at the base extending from proximate the base to body
coupling to the front of the body the first notch providing first tile edge-to-mortar-to-subfloor contact; and
a second notch formed at the base extending from proximate the base to body coupling to the rear of the body the second notch providing first tile edge-to-mortar-to-subfloor contact; and
the combination of the first notch and the second notch providing a majority of an area of tile-to-mortar-to-subfloor contact for the leveling device within the bounds of the base.


8.  A tile leveling device comprising:

a body defining an open window;
a base orthogonally coupled to the body, the base extending to the front of the body and the base extending to the rear of the body;
a base to body coupling including a frangible breakaway section, the base and body being integral prior to frangible separation, the frangible breakaway section, upon breaking, frangibly separating the body from the base;
a first notch formed at the base extending from proximate the base to body coupling to the front of the body; and
a second notch formed at the base extending from proximate the base to body coupling to the rear of the body; and
the combination of the first notch and the second notch providing a majority of an area of tile-to-mortar-to-subfloor contact for the leveling device within the bounds of the base.

### CERTIFICATE OF INTEREST

Pursuant to Fed. Cir. R. 47.4, Appellee EvenTile, Inc. certifies:

1.      *The full name of every entity represented in the case by the counsel filing the certificate*:  **EvenTile, Inc.**
> See Fed. Cir. R. 47.4(a)(1).

2.      *For each entity, the name of every real party in interest, if that entity is not the real party in interest*:     **None**.
> *See* Fed. Cir. R. 47.4(a)(2).

3.      *For each entity, that entity's parent corporation(s) and every publicly held corporation that owns ten percent (10%) or more of its stock*: **None**.

> *See* Fed. Cir. R. 47.4(a)(3).

4.      *The names of all law firms, partners, and associates that have not entered an appearance in the appeal and appeared for the entity in the lower tribunal or are expected to appear for the entity in this court*: **Joshua Martin of Johnson & Martin, P.A.; and Michael James Rutledge formerly of Johnson & Martin, P.A.**
> *See* Fed. Cir. R. 47.4(a)(4)

5.      *Other than the originating case number(s), the title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal*: **None**.
> *See* Fed. Cir. R. 47.4(a)(5) and 47.5(b).

6.      All information required by Federal Rule of Appellate Procedure 26.1(b) and (c) that identifies organizational victims in criminal cases and debtors and trustees in bankruptcy cases: **None; not applicable**.
> *See* Fed. Cir. R. 47.4(a)(6).

Dated: March 22, 2024

/s/Perry S. Clegg
Perry S. Clegg
*Attorney for Appellant*
*Modern Font Applications LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................7

TABLE OF ABBREVIATIONS .....................................................10

STATEMENT OF RELATED CASES ..........................................11

STATEMENT OF JURISDICTION ..............................................12

STATEMENT OF ISSUES ............................................................13

STATEMENT OF THE CASE ......................................................15

I.    Case History; Technological Background ..............................16

    A.    The Parties' Claim Constructions...................................21

        1.    The Term "Edge" ..................................................22

        2.    The "Majority of an Area" Term ...........................25

    B.    The District Court's Claim Construction Order ...........27

SUMMARY OF THE ARGUMENT .............................................29

STANDARD OF REVIEW ...........................................................33

ARGUMENT .................................................................................33

I.    The District Court's Construction of "Edge" Should be
Affirmed. .................................................................................34

    A.    A Clear and Unequivocal Disclaimer is Not Required for
a Narrower Construction; Meaning of Claim Terms May
Be Implied from Intrinsic Evidence................................35

    B.    The Patentees' Positions Taken During Prosecution of
the Patents-at-Issue Were an "Express Disavowal" ...................38

    C.    Acufloor's Overly Broad Claim Construction Proposal
Improperly Injects Ambiguity and Should Be Rejected .............44

    D.    Acufloor's Proposed Construction Conflicts with its use
of Base "Edge" in its Construction of "Notch"..............47

E.      The Court Should Reject Acufloor's Extrinsic Evidence
        Regarding the Term "Edge" ............................................................48

F.      Acufloor's Arguments Regarding FIG. 11A of the Patents
        and Commercial Embodiments are Flawed ..................................51

G.      Acufloor Waived Arguments Regarding Whether the
        District Court's Claim Construction is Correct. ...........................53

II.    The District Court's Construction of the "Majority of an Area"
       Term Should be Affirmed. ..........................................................................55

A.      "Majority of an Area" Refers to the Ratio of Notch to
        Plastic in the Base ..............................................................................56

III.   Conclusion and Relief Sought ....................................................................64

Addendum

Certificate of Compliance

Certificate of Service

# TABLE OF AUTHORITIES

***Cases:***                                                                                   ***Page(s):***

*Aptalis Pharmatech, Inc. v. Apotex Inc.,*
   718 F. App'x 965, 971 (Fed. Cir. 2018) ....................................................... 37

*AstraZeneca AB v. Mylan Pharm. Inc.,*
   19 F.4th 1325, 1335 (Fed. Cir. 2021)..................................................... 37, 62

*Athletic Alternatives, Inc. v. Prince Mfg., Inc.,*
   73 F.3d 1573, 1581 (Fed Cir. 1996) ...................................................... 45, 57

*Aventis Pharma S.A. v. Hospira, Inc.,*
   675 F.3d 1324, 1330 (Fed. Cir.2012) ......................................................... 36

*CoolIT Systems, Inc. v. Vidal,*
   2024 WL 981364 at *5-*6 (Fed. Cir. 2024) ................................. 34, 45, 46

*Elbex Video, Ltd. v. Sensormatic Elecs. Corp.,*
   508 F.3d 1366, 1371 (Fed. Cir. 2007) ........................................................ 43

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.,*
   93 F.3d 1572, 1580 (Fed. Cir. 1996) ..................................................... 45, 46

*Fenner Invs., Litd. v. Cellco P'ship,*
   778 F.3d 1320, 1323 (Fed. Cir. 2015) ........................................................ 37

*Fin Control Systems Pty, Ltd. v. OAM, Inc.,*
   265 F.3d 1311, 1318 (Fed. Cir. 2001) ........................................................ 47

*Grober v. Mako Prods., Inc.,*
   686 F.3d 1335, 1338-1344 (Fed. Cir. 2012).............................................. 43

*Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l,*
   222 F.3d 951, 956 (Fed. Cir. 2000) ........................................................... 53

*Hoganas AB v. Dresser Industries, Inc.,*

9 F.3d 948, 951 (Fed. Cir.1993) ................................................................. 57

*Home Diagnostics, Inc. v. LifeScan, Inc.,*
 381 F.3d 1352, 1357 (Fed. Cir. 2004) ....................................................... 43

*Intel Corp. v. Qualcomm Inc.,*
 21 F.4th 801, 810 (Fed. Cir. 2021)...............................................................61

*Interactive Gift Express, Inc. v. Compuserve Inc.,*
 256 F.3d 1323, 1346 (Fed. Cir. 2001) ....................................................... 55

*Int'l Visual Corp. v. Crown Metal Co.,*
 991 F.2d 768, 771-72 (Fed. Cir. 1993) ...................................................... 52

*Nautilus, Inc. v. Biosig Instruments, Inc.,*
 572 U.S. 898, 909 (2014) ........................................................................... 44

*Novo Nordisk A/S v. Becton Dickinson and Co.,*
 2000 WL 294852 at *2 (S.D.N.Y. March 21, 2000) ................................. 57

*NTP, Inc. v. Resch. In Motion, Ltd.,*
 418 F.3d 1282, 1296 (Fed. Cir. 2005)..................................................15, 55

*Nystrom v. TREX Co.,*
 424 F.3d 1136, 1144-45 (Fed. Cir. 2005) .................................................. 37

*O2 Micro Int'l Ltd. v. Beyond Innov. Tech. Co.,*
 521 F.3d 1351, 1362 (Fed. Cir. 2008) ....................................................15, 53

*Omega Eng'g, Inc, v. Raytek Corp.,*
 334 F.3d 1314, 1325 (Fed. Cir. 2003) ....................................................... 39

*Phillips, v. AWH Corp.,*
 415 F.3d 1303, 1319 (Fed. Cir. 2005) ....................................................... 49

*PODS, Inc. v. Porta Stor, Inc.,*
 484 F.3d 1359, 1366 (Fed. Cir. 2007)....................................................... 48

*Power-One, Inc. v. Artesyn Techs., Inc.,*
599 F.3d 1343, 1348 (Fed. Cir. 2010) ................................................. 45, 46

*Retractable Techs., Inc. v. Becton, Dickinson & Co.,*
653 F.3d 1296, 1305 (Fed. Cir. 2011) .......................................................... 38

*SimpleAir, Inc. v. Sony Ericsson Mobile Communications AB, 820 F.3d*
419, 429 (Fed. Cir. 2016) .......................................................................... 59

*SkinMedica, Inc. v. Histogen Inc.,*
727 F.3d 1187, 1204 (Fed. Cir. 2013) ............................................ 35, 36, 38

*SpeedTrack, Inc. v. Amazon.com,*
998 F.3d 1373, 1378 (Fed. Cir. 2021) ....................................................... 33

*Teva Pharms. USA, Inc. v. Sandoz, Inc.,*
574 U.S. 841, 332 (2015) .................................................................... 33, 49

*Trustees of Columbia University in City of New York v. Symantec Corp.,*
811 F.3d 1359, 1364 (Fed. Cir. 2016) ............................................ 35, 38, 39

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| '857 Patent | U.S. Patent No. 10,513,857 (Appx83 – Appx96) |
| '274 Patent | U.S. Patent No. 10,704,274 (Appx111 – Appx124) |
| '947 Patent | U.S. Patent No. 10,501,947 (Appx70 – Appx81) |
| '271 Patent | U.S. Patent No. 10,704,271 (Appx98 – Appx109) |
| '680 Design Patent | U.S. Design Patent No. D832,680 (Appx126 – Appx128) |
| '527 Design Patent | U.S. Design Patent No. D870,527 (Appx130 – Appx131) |
| Asserted Patents | The '857 Patent, the '274 Patent, the '947 Patent, '271  Patent, the '680 Design Patent, and the '527 Design Patent |
| Patents-at-Issue | The '857 Patent and the '274 Patent (the patents at issue in this appeal). |
| Acufloor | Plaintiff-Appellant Acufloor LLC |
| Appellant | Plaintiff-Appellant Acufloor LLC |
| EvenTile | Defendant-Appellee EvenTile, Inc. |
| Forpac | Defendant-Appellee Forpac, LLC |
| Defendants | Defendants-Appellees EvenTile and Forpac |

## STATEMENT OF RELATED CASES

No appeal in or from the same proceeding was previously before this Court or any other appellate court. Counsel is not aware of any case that may directly affect or be directly affected by this Court's decision in the pending appeal.

## STATEMENT OF JURISDICTION

Defendant-Appellee EvenTile, Inc. ("EvenTile") does not dispute the jurisdictional statement of Plaintiff-Appellant Acufloor LLC ("Acufloor").

## STATEMENT OF ISSUES

1. "When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innov. Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). Acufloor and Defendants argued for different interpretations of the term "tile edge". Was it proper for the district court to construe the term "tile edge" because of a fundamental dispute regarding the scope of the term tile edge?

2. "[P]resenting proposed claim constructions which alter claim scope for the first time on appeal invokes the doctrine of waiver as to the new claim constructions." *NTP, Inc. v. Resch. In Motion, Ltd.*, 418 F.3d 1282, 1296 (Fed. Cir. 2005). Acufloor "urge[d] the Court not to construe the term ["tile edge"] but to allow the jury to apply the terms' plain and ordinary meanings" and did not provide an alternative claim construction proposal. Appx6. Did Acufloor waive its arguments regarding the correctness of the district court's construction of "tile edge".

3. The patentees of the Patents-at-Issue repeatedly took the position that prior art tile spacer clips having openings permitting mortar contact very close to the extreme end of the tile surface were distinguishable from the claimed spacer clips, because they did not sufficiently support the "tile edge". Did the district court properly construe

the term "tile edge" more narrowly to account for the patentees' representations to the patent office?

4.    The patentees of the '274 patent amended into the claims the "Majority of an Area" term after the patent examiner "suggested Applicant focus on the size of each notch in relation to the size of the base" and "suggested that amending the claim language to better define the size of the notch would further distinguish from the prior art." Appx750. Was the district court correct to construe "Majority of an Area" term to mean "the notches in the base collectively span an area that is larger than the solid portions of the base, where Acufloor's proposed a contrary construction that renders the added limitation meaningless?

## STATEMENT OF THE CASE

This appeal involves whether the district court properly construed patent claim terms used in claims of the '857 and '274 patents relating to tile spacer clip and wedge systems for "leveling and aligning tiles." After providing Acufloor ample opportunity to explain its claim construction positions, the district court properly construed the claim term "tile edge" (used in the '857 and '274 patent claims) and the "majority of area" claim term (used in the '274 patent claims). Appx6-Appx11; Appx1803-Appx1944; Appx1778-Appx1800. The parties then agreed to a proposed Stipulated Judgment of Non-Infringement and jointly moved the court to enter it. The district court then entered final judgment of non-infringement. Appx1960-Appx1972. Acufloor now seeks to overturn the parties' Stipulated Final Judgment of Non-Infringement by challenging the district court's claim construction order. Appx1982-Appx1984; Acufloor's Opening Brief ("Acufloor Brief") (ECF 18) at 2-3. The district court's claim construction and the Stipulated Final Judgment of Non-Infringement were proper and should be affirmed.

Acufloor raises for the first time, in this appeal, new claim construction arguments that it failed to raise with the district court, despite having ample opportunity to do so. Acufloor also seeks to inject extrinsic

evidence into the appeal, even though the district court's claim construction order was based entirely on intrinsic evidence, including the specification and the patent prosecution history. Acufloor Brief at 23, 42, and 49; Appx3-Appx20. The district court's claim construction order did not rely on any extrinsic evidence. Appx3-Appx20. Acufloor's attempt at a do-over should be rejected.

## I.     Case History; Technological Background

Acufloor brought this action against EvenTile and Forpac alleging infringement of the '857 Patent, the '274 Patent, the '947 Patent, the '271 Patent, the '680 Design Patent, and the '527 Design Patent on October 29, 2021, in the U.S. District Court for the Middle District of Florida. Appx38-Appx138. On appeal, however, only the '857 Patent and '274 Patent claim terms are at issue. Acufloor Brief at 4. The '857 and '274 Patents share a common specification and disclose various embodiments of a tile spacer clip and wedge system for "leveling and aligning tiles." Appx83-Appx96; Appx111-Appx124. A few examples from the Patents-at-Issue include:



*See, e.g.,* Appx85, Appx89, and Appx90.

Because tile wedge and clip systems for leveling and aligning tiles were commonly known in the art before any of the Asserted Patents and were raised by the patent examiner during prosecution, they are relevant to construing the asserted claims. Appx1787-Appx1792. A few examples of prior art tile leveling and aligning clip and wedge systems include:



March 26, 2007, "Doda" Prior Art – FIG. 8 (US 2008/0236094); Appx1787



Left - "Sighinolfi" Prior Art – FIG. 1 (U.S. 8,671,628); Appx1788

Right – "Ghelfi" Prior Art – FIG. 10 (U.S. 8,887,475); Appx1797

The claim terms at issue specifically relate to features of the spacer clip claimed by the Patents-at-Issue. To wit, they relate to the amount and location of mortar contact that the claimed spacer clip permits between a tile and the subfloor. Because tile spacer clips providing tile-to-mortar-to-subfloor contact were well known in the art before the Patents-at-Issue, the patentees had to amend the asserted claims prosecution to distinguish the prior art. Some examples of tile spacer clips of the prior art include:



Figure 7 of Int'l. Patent Pub. No.
WO2013/033761 "Psaila"



Appx1663, Appx1674, Appx1700, Appx1703, Appx1724, Appx1206

Acufloor has accused EvenTile's tile spacer clip shown below as part of Acufloor's infringement claims.



Appx172, Appx197.

Notably, Defendants-Appellees' accused tile spacer clips are very similar to and provide no more tile-to-mortar-to-subfloor contact than the prior art, as can be seen in the below comparisons.



Figure 7 of Int'l. Patent Pub. No. WO2013/033761 "Psaila"

Appx172, Appx197, Appx 1674, Appx1700, Appx1703.

### A. The Parties' Claim Constructions

Acufloor contests only two claim terms that are at issue in this appeal.

The parties set forth these two claim terms and their proposed

constructions in the Joint Claim Construction statement as follows:

| Term | Acufloor Proposal | EvenTile Proposal | Forpac Proposal |
|---|---|---|---|
| tile edge | Plain and Ordinary meaning | the line that is the intersection of two plane faces of a tile | The line at which a surface of a tile terminates. |
| the combination of the first notch and the second notch providing a majority of an area of tile-to-mortar-to-subfloor contact for the tile leveling device within the bounds of the base | The combination of the first notch and the second notch providing the majority of the tile-to-mortar-to-subfloor contact that exists within the bounds of the base. | the space created by the combination of the first notch and the second notch for providing the tile-to-mortar-to-subfloor contact comprising the majority of the area within the bounds of the base | The notches in the base collectively span an area that is larger than the solid portions of the base. |

Appx521.

The first term, "tile edge" or "edge", appears in claims 1 and 10 of the

'857 Patent and claims 1 and 5 of the '274 Patent. The second term, which

the parties have referred to as the "Majority of an Area" term, appears in

claims 1, 5, and 8 of the '274 Patent. Regarding the term "edge", the district court adopted Defendant Forpac's proposed construction over Defendant EvenTile's proposal, finding it "simpler and easier to understand." Appx8. EvenTile does not contest that finding and submits arguments herewith in support of the district court's construction of "edge". Acufloor, on the other hand, never proposed an alternative construction to the term "tile edge" and instead argued that the plain and ordinary meaning of "tile edge" would be sufficient. Appx584-Appx587. As the court noted, Acufloor "urge[d] the Court not to construe the term[] but to allow the jury to apply the terms' plain and ordinary meanings." Appx6.

Regarding the "Majority of an Area" term, EvenTile agreed to Forpac's proposed construction of this term during the claim construction hearing and the court adopted that construction. Appx10-Appx11.

### 1.    The Term "Edge"

In addition to the court's construction of the term "edge" that Acufloor contests in this appeal, the term "edge" was part of other claim term constructions that Acufloor has not contested or appealed and that Acufloor actually either proposed or stipulated to. For example, Acufloor argued in its Claim Construction Brief that the term "notch" in the base of the tile spacer clip should be construed to be an "opening **intersecting** an

**edge** of the base through which mortar can penetrate". Appx520, Appx575-Appx578 (emphasis added). The district court adopted Acufloor's proposed construction of the term "notch" defined a "notch" in reference to the term "edge". Appx8.

The patentees distinguished their notches from other openings in the bases of spacer clips found in the prior art during both patent prosecution and in their arguments for certain claim constructions; the patentees argued that these openings in the spacer clip bases of the prior art were not "notches". See, e.g., Appx1697-Appx1700. For example, patentees argued that "Doda fails to disclose that said opening is a notch" in reference to the opening in the spacer clip base of the "Doda" prior art (shown below). *See, e.g.*, Appx1698-Appx1699.



FIG. 8 from "Doda" Prior Art – See, e.g., Appx1787.

The patentees never argued that the "notch" could be formed by simply intersecting an "area near the edge" of the tile spacer clip base or by

intersecting an "area or region" where a surface of the tile spacer base ended. Appx575-Appx579. Rather, the patentees provided a side-by-side comparison of the alleged invention and prior art and sought to distinguish the tile spacer clip base openings of the prior art from the openings (*i.e.*, "notches") in the tile spacer clip base claimed by the patentees as shown below.



Appx1697-Appx1700.

Acufloor's proposed claim construction for "notch" – that the district court adopted – defines a "notch" as an "opening **intersecting** an **edge** of the base . . . ." For the patentees to distinguish the base openings of the prior art, "edge" would have to be a "line at which a surface of the base terminates". Otherwise, if "edge" was merely defined as an "area or region"

near where a base surface ends or terminates or an "area near the edge" (as Acufloor inconsistently argues for tile "edge"), then the openings in the tile spacers of the prior art (shown above) would also be "notches" and anticipate the "notches" of the claimed tile spacer clips. *Id.*

Also during claim construction, the parties (*e.g.*, Acufloor) stipulated to construction regarding longer claim terms that included the term "tile edge" or "edge". See Stipulated Constructions at Appx528. The stipulated constructions for these longer claim terms that include the term "edge" effectively require a vertical column of mortar spanning between the subfloor and the "edge" of the tile. Appx528.

### 2.    The "Majority of an Area" Term

The '274 Patent specification did not originally include the "Majority of an Area" term or even the concept. That term was first added to the '274 Patent application by way of a March 25, 2020 amendment to the claims to overcome a refusal based on the prior art combination of Doda and Psaila. See Appx803-Appx829 at Appx7 . The examiner's refusal (Appx795-Appx801) included a markup drawing to demonstrate the combination of Doda and Psaila, shown below:



Appx799.

The Examiner explained that the cited combination modifies "Doda with the configuration of Psaila *by extending the opening 129 all the way to the front portion of 116…*" Appx799 (emphasis original). In response, the patentees submitted a Response Under 37 C.F.R. §1.116 with Request for Examiner Interview dated December 26, 2019. Appx674-Appx698. The patentee's December 26, 2019 arguments, however, failed to persuade the examiner and, during the subsequent Applicant-Initiated Interview, the examiner "suggested Applicant focus on the size of each notch **in relation to the size of the base**" and "suggested that amending the claim language **to better define the size of the notch** would further distinguish from the prior art." Appx750 (emphasis added).

In response, the patentee amended the "Majority of an Area" term into the pending claims and argued that the new claim language distinguished the invention from the prior art because the prior art lacked sufficient area

to provide the claimed functionality of tile edge-to-mortar-to-subfloor contact. Appx807; Appx814-Appx815.  The examiner then issued a Notice of Allowance on April 3, 2020. Appx831-Appx833.

## B.    The District Court's Claim Construction Order

The district court issued its Claim Construction Order on November 21, 2022, after full briefing and a hearing that included oral argument on claim construction, technology tutorials, discussions of the prior art, and multiple slide presentations. *See, e.g.*, Appx3-Appx20; Appx569-Appx604; Appx970-Appx1004; Appx1375-Appx1412; Appx1803-Appx1944; Appx1658-Appx1800.  The district court's claim construction order relied entirely on intrinsic evidence and did not reference any extrinsic evidence. Appx3-Appx20. Among the terms construed by the court were the terms at issue in this appeal: the term "tile edge" and the "Majority of an Area" claim term. Appx6-Appx8; Appx9-Appx11.

Regarding the term "tile edge," the district court found that "the prior art allowed mortar to reach an area near the edge of the tile, but according to the inventors that was not 'edge-to-mortar-to-subfloor contact.'" Appx6. The district court also found that "[t]he inventors relied on mortar-to-tile contact up to the very edge of the tile, rather than an area near the very edge, to distinguish their invention from the prior art." Appx7. Accordingly,

the district court held that Forpac's claim construction proposal most clearly communicates this limitation to a jury. Appx8.

Regarding the "Majority of an Area" term, the district court found that the prosecution history cited by Acufloor favors Defendants' claim construction proposals:

> In an August 13, 2018 response and request for continued examination, the applicants added the "majority of an area" phrase to their claims and used the phrase to distinguish their invention from the prior art. The prior art device at issue had openings in its base that allowed mortar to spread over the transverse member of the base and adhere the tile to the transverse member. The notches in the claimed device, on the other hand, allowed for a larger area of uninterrupted subfloor-to-mortar-to-tile contact. In the words of the applicants, the claimed design allowed "more adhesive to penetrate the opening and extend over a greater surface area of the tiles" than the prior art. **The applicants gave no indication they contemplated other openings when adding the "majority of an area" phrase**.

Appx10 (emphasis added; citations omitted).

The district court determined that the "Majority of an Area" phrase was added to the claims in order to demonstrate that the claimed device "allowed for a larger area of uninterrupted subfloor-to-mortar-to-tile contact" when compared to the prior art. *Id*. The district court's holding is consistent with the specification, because there are no embodiments disclosed in the '274 Patent specification that have openings in the base of the tile spacer clips other than the claimed "notches". Appx111-Appx124.

Indeed, nowhere in the '274 Patent specification is the concept of "majority of an area" disclosed or even referenced except for in the later added "Majority of an Area" phrase in the claims added by amendment. *Id.*

## SUMMARY OF THE ARGUMENT

After extensive briefing, submission of expert declarations, technology tutorials, and oral argument, the district court properly construed claim terms on which the parties disagreed as to the proper construction. The district court's order relied entirely on the intrinsic evidence based largely on positions taken by the patentees with the patent office, including repeated arguments made by the patentees to the patent examiner. Acufloor now contests the district court's construction of two terms: "tile edge" and what the parties refer to as the "Majority of an Area" claim term. Acufloor never proposed a construction for "tile edge", but instead urged the district court not to construe the term "tile edge" or "edge" and argued that the court should allow the jury to apply the terms' plain and ordinary meaning. Appx6.

During prosecution of the Patents-at-Issue, the patentees took positions regarding the prior art in order to obtain the patents. Acufloor

now wishes to ignore those limitations in an attempt to obtain broader claim coverage than what was awarded.[1]

Regarding the term "Tile Edge," the patentees distinguished their invention from the prior art by demonstrating that only its invention provides "tile edge-to-mortar-to-subfloor contact" even though the prior art permitted mortar to touch very near to the extreme end of the tile. Clearly for the patentees, being "close" or "near" the end of a tile surface wasn't sufficient; mortar must touch the line where the surface of the tile terminates in order to truly achieve "edge-to-mortar- to-subfloor" contact. Acufloor argues that its representations to the patent office do not rise to the level of a disclaimer.

EvenTile disagrees because the patentee was clear and unequivocal in its arguments. But the Court need not determine whether there was a disclaimer, because Acufloor did not provide an alternative construction. Accordingly, the appropriate scope of review is simply whether the District Court was correct to issue a construction. To the extent that this Court sees fit to entertain the question of whether the construction itself is correct, this

---

[1] *See Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1578 (Fed. Cir. 1995) ("A patentee may not proffer an interpretation for the purposes of litigation that would alter the indisputable public record consisting of the claims, the specification and the prosecution history, and treat the claims as a 'nose of wax.'")

case is analogous to others where the proper scope of the claim term was found to be narrower than the plain and ordinary meaning without first finding an express disclaimer or of claim construction is to 'capture the scope of the actual invention' that is disclosed, described, and patented"); Aptalis Pharmatech, Inc. v. Apotex Inc., 718 F. App'x 965, 971 (Fed. Cir. 2018)("[a]ccordingly, even in the absence of a clear and unmistakable disavowal, . . . the prosecution history can be evaluated to determine how a person of ordinary skill would understand a given claim term.") Finally, the patentee's prosecution statements do rise to the level of a disclaimer or disavowal.

Regarding the "Majority of an Area" term, the patentee distinguished its invention by arguing that the cited combination only permitted a smaller surface area of mortar to pass through the notch. This was also done after the patent examiner "suggested Applicant focus on the size of each notch in relation to the size of the base" and "suggested that amending the claim language to better define the size of the notch would further distinguish from the prior art." In this case, a construction is necessary to provide the "Majority of an Area" term with both its prosecution subtext as well as a meaning that is not superfluous, otherwise, it would be meaningless in the context of the claim. See, e.g., Intel Corp. v.

Qualcomm Inc., 21 F.4th 801, 810 (Fed. Cir. 2021) ("[i]t is highly disfavored to construe terms in a way that renders them void, meaningless, or superfluous"). Acufloor ironically argues that that the district court's claim construction renders of portion of the term superfluous. Yet, Acufloor's proposed construction renders the patentees limitation void or superfluous.

## STANDARD OF REVIEW

The Federal Circuit reviews the district court's claim construction based on intrinsic evidence de novo. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 841, 332 (2015) ("The appellate court can still review the district court's ultimate construction of the claim de novo"); *SpeedTrack, Inc. v. Amazon.com*, 998 F.3d 1373, 1378 (Fed. Cir. 2021) ("We review claim construction based on intrinsic evidence de novo . . ."). However, issues regarding extrinsic evidence raised in the appeal are reviewed for clear error. *SpeedTrack*, 998 F.3d at 1378 ("We . . . review any findings of fact regarding extrinsic evidence for clear error."); see also, *Teva Pharmaceuticals,* 574 U.S. at 332 ("to overturn the judge's resolution of an underlying factual dispute, the Court of Appeals must find that the judge, in response to those factual findings, has made a clear error.").

## ARGUMENT

The district court's claim constructions properly account for how the patentees used those terms in the patent specification and during prosecution. Acufloor's proposed constructions seek to expand term meanings beyond the prior art and in contradiction to the claim scope represented by the patentees during prosecution. Further, Acufloor's proposed construction on appeal creates ambiguity regarding the bounds to

the claim terms. Accordingly, this Court should affirm the district court's Claim Construction Order and deny Acufloor's appeal.[2]

## I.    The District Court's Construction of "Edge" Should be Affirmed.

During the district court proceedings, Acufloor urged the district court not to construe the term "tile edge" or "edge" and instead argued that the court should allow the jury to apply the terms' plain and ordinary meaning. Appx6. Yet, on appeal, Acufloor now proposes that the Federal Circuit impose an impermissibly broad construction of "tile edge" that includes an undefined area or region near the end of the tile surface – a construction that would render the claims vague and indefinite and allow Acufloor to recapture subject matter that it gave up during prosecution of the Patents-at-Issue.[3] Appx1391; Acufloor Brief at 39. The district court's construction of the term "edge" was proper. Accordingly, this Court should affirm the district court's claim construction and reject Acufloor's request for an overly broad and ambiguous construction.

---

[2] EvenTile also adopts the arguments, reasoning, and positions of Forpac as set forth in Forpac's Response Brief, which Acufloor hereby joins and incorporates herein by reference.

[3] *CoolIT Systems, Inc. v. Vidal*, 2024 WL 981364 at *5-*6 (Fed. Cir. 2024) (rejecting claim construction using terms that might "cause more confusion than clarity").

## A.    A Clear and Unequivocal Disclaimer is Not Required for a Narrower Construction; Meaning of Claim Terms May Be Implied from Intrinsic Evidence

Acufloor incorrectly argues that the district court errored when issuing its claim construction of the term "edge" because the patentees allegedly did not "clearly and unequivocally disclaim" a broader interpretation. Even, *arguendo*, that there wasn't a clear and unequivocal disclaimer or disavowal – which there was (see below) – the Court does not need to find there was such a clear and unequivocal disavowal to affirm the district court's claim construction.

First, the Federal Circuit has rejected the argument that a presumption of plain and ordinary meaning can only be overcome when the patentee has expressly defined a term or has expressly disavowed the full scope of the claim in the specification and the prosecution history. *Trustees of Columbia University in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1364 (Fed. Cir. 2016). Rather, the meaning of claim terms may be implied by the intrinsic evidence.  *Id.*; *see also SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187, 1204 (Fed. Cir. 2013) ("although the inventors never explicitly redefined "culturing ... cells in three-dimensions" to exclude the use beads, they affected a clear implicit disclaimer of culturing with beads from the scope of their claimed invention")

"Even when guidance is not provided in explicit definitional format, the specification may define claim terms by implication such that the meaning may be found in or ascertained by a reading of the patent documents." *Id.* (cleaned up). "[The] law does not require explicit redefinition or disavowal." *Id.* at 1363 (citing *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1330 (Fed.Cir.2012)).

The prosecution history for the Patents-at-Issue clearly shows the patentees took the position that prior art tile spacer clips having openings permitting mortar contact <u>very close to the extreme end of the tile</u> were distinguishable because they did not sufficiently support the "tile edge". Being in an area or region near the end of a tile surface was not sufficient for the patentees and the patentees distinguished the prior art from their claimed invention based on such in arguments to the patent office. The district court's claim construction of "edge" recognized this.

Second, a court may issue a construction that is "narrower" than the plain and ordinary meaning without determining that the patentee disclaimed subject matter. "[E]ven in the absence of a clear and unmistakable disavowal, . . . the prosecution history can be evaluated to determine how a person of ordinary skill would understand a given claim term." *Aptalis Pharmatech, Inc. v. Apotex Inc.*, 718 F. App'x 965, 971 (Fed.

Cir. 2018).  "Any explanation, elaboration, or qualification presented by the inventor during patent examination is relevant, for the role of claim construction is to 'capture the scope of the actual invention' that is disclosed, described, and patented." *Fenner Invs., Ltd. v. Cellco P'ship*, 778 F.3d 1320, 1323 (Fed. Cir. 2015) (quotations omitted). As the Federal Circuit noted in *Nystrom v. TREX Co.*, "A party is . . . not entitled to a claim construction divorced from the context of the written description and prosecution history." 424 F.3d 1136, 1144-45 (Fed. Cir. 2005).

Acufloor's argument that only lexicography or disclaimer can alter the scope of a claim term is overly rigid and contrary to Federal Circuit precedent. *See, e.g., AstraZeneca AB v. Mylan Pharm. Inc.*, 19 F.4th 1325, 1335 (Fed. Cir. 2021). As this Court recognized in *AstraZeneca*, "this narrow view of our precedent would necessitate adopting an acontextual construction of this disputed claim term." *Id.* at 1329-1330. "[T]he ordinary meaning of a claim term is not the meaning of the term in the abstract. Instead, the ordinary meaning of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Id.* (cleaned up).[4]

---

[4] This Court has also held: "Any explanation, elaboration, or qualification presented by the inventor during patent examination is relevant, for the role of claim construction is to 'capture the scope of the actual invention' that is disclosed, described, and patented." *Fenner Invs., Ltd. v. Cellco P'ship*, 778 F.3d 1320, 1323 (Fed. Cir. 2015) (quoting

The district court's construction of "edge" properly took into consideration the patent prosecution history for the Patents-in-Suit, including the positions taken by the patentees with the patent examiner and before the patent office.

### B.    The Patentees' Positions Taken During Prosecution of the Patents-at-Issue Were an "Express Disavowal"

Acufloor's argument that "the district court failed to cite any clear and unequivocal disclaimer dictating its adopted constructions" is flawed and unavailing. Acufloor Brief at 41. First, as discussed above, the meaning of claim terms may be implied by the intrinsic evidence.  *Trustees of Columbia University*, 811 F.3d at 1364. A disclaimer does not have to be explicit, rather the patentees may effect an implicit disclaimer of the scope of their claimed invention. *See, e.g.*, *SkinMedica*, 727 F.3d at 1204. ("although the inventors never explicitly redefined "culturing … cells in three-dimensions" to exclude the use beads, they affected a clear implicit disclaimer of culturing with beads from the scope of their claimed invention") Thus, the Federal Circuit has rejected the argument that a presumption of plain and ordinary meaning can only be overcome when the patentee has expressly defined a term or has expressly disavowed the full

---

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011)).

scope of the claim in the specification and the prosecution history. *Trustees of Columbia University*, 811 F.3d at 1364.

Nonetheless, the patentees of the Patents-at-Issue in the present case did make statements effecting a disavowal of claim scope. Acufloor cites *Omega Eng'g, Inc, v. Raytek Corp.*, to argue that the patentees' statements did not rise to the level of disavowal or disclaimer. 334 F.3d 1314, 1325 (Fed. Cir. 2003). Acufloor's reliance on *Omega Eng'g*, however, is misplaced. In *Omega Eng'g,* the Federal Circuit did not find that there was no disclaimer; rather, the Court found that the disclaimer was more limited than what the district court articulated. *Id.* at 1323. In *Omega Eng'g*, the patentee made arguments to distinguish the prior art and repeated the arguments in different amendments. *Id* at 1326-1327. These arguments effected a disavowal of claim scope:

> Omega repeatedly insisted that its invention differed from the prior art by precluding appreciable heat from entering the energy zone and affecting the temperature of the energy zone. By insisting that its invention directs energy in a way that does not affect temperature measurement, the patentee has rejected the examiner's broad assessment of the claim scope and stated in a public record what his invention could not be. That statement is a deliberate surrender of claim scope, . . .

*Id.* at 1327.

The same is true in the instant case. The patentees repeatedly made arguments to the patent office during prosecution that arose to a deliberate

surrender of claim scope. The district court properly found that Acufloor "relied on mortar-to-tile contact up to the very edge of the tile, rather than an area near the very edge, to distinguish their invention from the prior art." Appx7. The district court further found that Acufloor "repeatedly distinguished their invention from tile spacers in the prior art by showing that only their invention allowed for mortar contact all the way to the very edge of the tile." Appx7.

As the district court recognized, the patentees went to great lengths to persuade the examiner that close to the edge of the tile was not sufficient to constitute "edge-to-subfloor contact." The district court referenced Acufloor's Demonstrative Aid (Appx1080) and pointed out that Acufloor amended the independent claim to include "edge-to-subfloor contact." Appx1053.   Regarding the '274 Patent, the patentees submitted the following with their Demonstrative Aid to the USPTO:



Appx1663.

The patentees refuted the examiner's broader interpretation of "edge-to-subfloor contact" in the prior art by showing that the prior art clips were not capable of "edge-to-subfloor contact." The prior art clearly permitted mortar contact very near the edge. The patentees asserted during prosecution – *i.e.*, in a public record – that only their invention was capable of "edge-to-subfloor contact". Thus the patentees stated in a public record what the invention could not be; the claimed invention cannot cover clips that only permit mortar to flow near the edge. The patentees' statement is a deliberate surrender of claim scope that is not suitable to multiple interpretations. Because the patentee did not provide precise measurements of how much closer to the edge its invention permits mortar contact, the only possible interpretation of this statement is that the invention must permit mortar to flow all the way to the edge, *i.e.*, the line where the surface of the tile terminates.

The patentees made similar representations during prosecution of the '857 Patent. For example, the patentees annotated a prior art drawing (shown below) and provided it to the patent office during prosecution to demonstrate that if the "edge" of the tile were to rest on the center of prior art clip, there could be no "edge-to-subfloor contact."



Patent Application Publication      May 16, 2013  Sheet 11 of 13      US 2013/0118115 A1

Appx1052. As can be seen, the area that the patentees claimed precluded "edge-to-subfloor contact" is very narrow. For context, Acufloor demonstrated that the "screw hole" openings were approximately one quarter inch in diameter, suggesting that even a much smaller fraction of an inch of interference would be sufficient to preclude "edge-to-subfloor" contact.

Thus, during prosecution of the patents at issue, the patentees clearly disavowed the claim scope that Acufloor now seeks to recapture. As to the cases that Acufloor relies on to deny a disavowal, those cases are inapposite and easily distinguished. For example, in *Home Diagnostics, Inc. v.*

*LifeScan, Inc.*, the district court treated a "preferred embodiment" from the specification as a disavowal without any statements from the prosecution history on which the court could have relied. 381 F.3d 1352, 1357 (Fed. Cir. 2004). Unlike in *Home Diagnostics*, the district court in the instant case did not treat a "preferred embodiment" as a disavowal and the district court the present case relied on the patentees' relevant prosecution statements found in the public record. Regarding *Grober v. Mako Prods., Inc.*, the district court had relied on prosecution statements that were focused on a different issue than the scope of the claim feature that the district court was limiting. 686 F.3d 1335, 1338-1344 (Fed. Cir. 2012).  Unlike in *Grober*, in the present case the patentees' prosecution statements speak directly to the concept of "edge."

Likewise, *Elbex Video, Ltd. v. Sensormatic Elecs. Corp.* is inapposite. 508 F.3d 1366, 1371 (Fed. Cir. 2007). In *Elbex Video,* the prosecution statement on which the district court relied directly conflicted with other statements in the same prosecution document and was outweighed by the fact that it would render the device inoperable. *Id.* at 1373. Unlike in *Elbex Video,* in the present case the district court's construction does not render the claimed device inoperable and aligns with the patentees' repeated

prosecution position, namely, that edges are the most vulnerable points of a tile. Appx1080-Appx1082.

Finally, Acufloor argues that the construction is inconsistent with the plain meaning of edge. However, Acufloor admits that there are multiple definitions for the term "edge" and that the district court's construction is actually consistent with one of them. See, Appx1036 ("the line where an object or area begins or ends." The fact that there are multiple other definitions of edge is irrelevant, because the nature of this exercise is to determine whether Acufloor has surrendered those other definitions, which it has.

### C.    Acufloor's Overly Broad Claim Construction Proposal Improperly Injects Ambiguity and Should Be Rejected

The U.S. Supreme Court has held that "a patent must be precise enough to afford clear notice of what is claimed, thereby apprising the public of what is still open to them. Otherwise there would be a zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 909 (2014)(cleaned up). Patents reward inventors with a limited monopoly and "[t]hat monopoly is a property right, and like any other property right, its boundaries must be clear." *Id.* at 901 (cleaned up). "The terms, as construed by the court, must 'ensure that the jury fully

understands the court's claim construction rulings and what the patentee covered by the claims.'" *Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1348 (Fed. Cir. 2010).

Accordingly, where a proposed construction results in ambiguity, a narrower construction that excludes that ambiguity should be adopted. *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1580 (Fed. Cir. 1996) ("Having so concluded, we held, derived from our understanding of the second paragraph of U.S.C. § 112 (1994), that to the extent that the claim is ambiguous, a narrow reading which excludes the ambiguously covered subject matter must be adopted.")(quoting *Athletic Alternatives*); *see also Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1581 (Fed Cir. 1996) ("Where there is an equal choice between a broader and a narrower meaning of a claim, and there is an enabling disclosure that indicates that the applicant is at least entitled to a claim having the narrower meaning, we consider the notice function of the claim to be best served by adopting the narrower meaning.").

Likewise, claim constructions that introduce terms creating more confusion than clarity should be rejected. *CoolIT Systems, Inc. v. Vidal*, 2024 WL 981364 at *5-*6 (Fed. Cir. 2024) (non-precedential) (rejecting

claim construction using terms that might "cause more confusion than clarity").

In the instant appeal, Acufloor proposes that the term "edge" be construed to mean a region of the tile or "to refer to the area or region where two surfaces of a tile meet." Acufloor Brief at 42. The problem, however, with Acufloor's proposed construction is that it adds the words "area" and "region", which would also need to be construed in order to provide any meaningful boundaries to the claims. Thus, the addition of the words "area" and "region" do not "'ensure that the jury fully understands the court's claim construction rulings and what the patentee covered by the claims.'" *Power-One*, 599 F.3d at 1348. In fact, these additional terms create more confusion than clarity and should be rejected. *CoolIT Systems*, 2024 WL 981364 at *5-*6.

Acufloor's proposed construction that an edge is an "area or region" is exceptionally broad and results in ambiguity regarding what is and is not covered by the claims. The district court correctly construed the term "edge" in a manner that excludes that ambiguity and is consistent with the prosecution history. *Ethicon Endo-Surgery,* 93 F.3d at 1580. Accordingly, this Court should affirm the district court's construction of the term "tile edge".

### D.    Acufloor's Proposed Construction Conflicts with its use of Base "Edge" in its Construction of "Notch"

Acufloor's proposed construction should also be rejected because it conflicts with Acufloor's claim construction position on "notch", which the court adopted. This Court has held that in claim construction, "we begin with the presumption that the same terms appearing in different portions of the claims should be given the same meaning unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims." *Fin Control Systems Pty, Ltd. v. OAM, Inc.*, 265 F.3d 1311, 1318 (Fed. Cir. 2001).

Here, Acufloor argued that the term "notch" should be construed to be an "opening intersecting an **edge** of the base through which mortar can penetrate". Appx520, Appx575-Appx578 (emphasis added). Thus, the term "edge" was added into the claims when referring to the base and the notch pursuant to Acufloor's proposed construction. The district court adopted Acufloor's construction. Appx8. The term "edge" as applied to the base must be a line. Otherwise, if the base opening merely intersected an area or region and not the very end of the surface, then it would be a hole and could not be distinguished from the holes in tile spacer clips of the prior art.

Ironically, Acufloor seeks to apply a different meaning to the term "edge" when applied to tile within the same claims. Acufloor should not be

permitted to take contradictory positions on the term "edge" within the same claims. In *PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359,1366 (Fed. Cir. 2007), the parties had agreed to the meaning of certain claim terms within claims 1 and 32. The defendant argued that the terms should have the same meaning in another claim. But the district court in that case agreed with the plaintiff and construed the claim differently. On appeal, this Court reversed the PODS district court, stating: "PODS has pointed to no evidence in the specification or the prosecution history that the term "carrier frame" in claim 29 has any meaning other than the uncontested meaning in claim 1." *Id.* Here, Acufloor agreed to the use of the term edge for one construction and should no be permitted to argue a different use of the term edge in another construction within the same claim.

Accordingly, this Court should affirm the district court's construction of "edge" where it is consistent with how the term "edge" is used in connection with other construed claims that Acufloor agreed to.

### E.    The Court Should Reject Acufloor's Extrinsic Evidence Regarding the Term "Edge"

Acufloor argues that the standard or review on appeal is de novo yet seeks to have this Court consider extrinsic evidence (*e.g.*, expert witness testimony) that the district court implicitly rejected when issuing a claim construction order that relied solely on the intrinsic evidence. Acufloor

Brief at 23, 28, 42, 49, 50. This Court reviews the district court's decision not to give weight to or rely on Acufloor's extrinsic evidence for clear error. *Teva Pharms. USA*, 574 U.S. at 332–33. Acufloor has not demonstrated that the district court committed clear error by not giving weight to Acufloor's expert witness testimony or other extrinsic evidence. Thus, this Court should reject Acufloor's arguments regarding its extrinsic evidence.

Even were this Court to consider Acufloor's expert witness declaration and other extrinsic evidence submitted by Acufloor, extrinsic evidence should be tempered unless considered within the context of the intrinsic evidence. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1319 (Fed. Cir. 2005). In particular, extrinsic evidence in the form of expert testimony can often be of limited or no value due to the presence of "bias that is not present in intrinsic evidence." *Id.* at 1318. The probative value of extrinsic evidence is limited to its consistency with the intrinsic evidence of the Patents at-Issue. *See, e.g., Id.* at 1303.

Here, Acufloor's expert testimony and other extrinsic evidence is inconsistent with the intrinsic evidence, *i.e.*, inconsistent with the patent specification and the positions taken by the patentees during prosecution to distinguish the claimed invention from the prior art. Moreover, when contrasted with the extrinsic evidence submitted by EvenTile, it's evident

that EvenTile's extrinsic evidence, while not referenced in the Claim

Construction Order, aligns more closely with the intrinsic evidence and

positions taken by the patentees during prosecution of the Patents-at-Issue.

For example, Ralph Perillo, the owner of a tile installation who has

approximately 32 years of experience installing tile, testified that the

reference to "tile edges" in the industry is typically a reference "to the

intersection of tile surfaces":

> Regarding the term "edge", this term is rarely used in the tile
> industry except to refer to chips on the edge of the tile or
> possibly when referring to backbuttering a tile. When talking
> about tile installation, reference is typically made to "tile joints"
> instead of "tile edges". **When referring to "tile edges"** in the
> context of tile chips, **we are typically referring to the
> intersection of the tile surfaces**, such as the bottom or top
> surface with the side surface of the tile.

Appx1414-Appx1417 (emphasis added).

Likewise, Cameron Orr, Acufloor's expert witness regarding the

understanding of an ordinary person skilled in the art, testified that a

person of ordinary skill in the art "would understand that a tile edge is **a

line** where two plane faces of a tile intersect . . . ." Appx1419, Appx1421. Mr.

Orr has a Bachelor's degree in mechanical engineering and is the

Engineering Manager of Alpine Engineering and Design, Inc. responsible

for design and prototyping. Appx1427. Mr. Orr is experienced in designing

small plastic parts such as those that are the subject matter of the Patents-

at-Issue. Appx1427. According to Mr. Orr, a person of ordinary skill in the art of designing small plastic parts would understand tile "edge" to be "a line where two plane faces of a tile intersect" based on principles related to the design of small plastic parts, including principles involved with working with CAD software. Appx1451-Appx1460. As noted in Mr. Orr's testimony:

> Often designing small plastic parts requires the use of 3D CAD software, wireframe models, and/or 2D drawings. In such models and drawings, the edge is clearly defined as the line where two surfaces meet.

Appx1455.

The testimony of Mr. Perillo (a person skilled in the installation of tile) and the testimony of Mr. Orr (a mechanical engineer skilled in the design of small plastic parts) are entirely consistent with each other and with the intrinsic evidence (*i.e.*, the specification and prosecution history). Likewise, they are consistent with and support the district court's construction of the term "tiled edge".

### F.    Acufloor's Arguments Regarding FIG. 11A of the Patents and Commercial Embodiments are Flawed

Acufloor argues that the district court erred by failing to address Figure 11A of the asserted patents and the commercial embodiments where the clip body appears thinner than the base. Acufloor argues this would

preclude "edge-to-subfloor contact" if edge is limited to a line at which the surface of the tile terminates. This argument is flawed for several reasons.

First, Acufloor's arguments regarding its commercial embodiments are without merit. Acufloor produces a number of commercial embodiments with varying body thicknesses in order to accommodate different grout line thickness in tile installations. *See, e.g.*, Appx1666. During the Markman hearing, Forpac submitted a slide presentation demonstrating that Acufloor has commercial embodiments having body thicknesses sufficient to push the edge of the tile off of the base, and rest completely over the mortar in the notch. Appx1666 (see yellow commercial embodiment on right). The fact that Acufloor's other products fail to achieve the stated goal of its patent claims should not be given any weight, because commercial embodiments are rarely helpful in claim construction. *See Int'l Visual Corp. v. Crown Metal Co.*, 991 F.2d 768, 771-72 (Fed. Cir. 1993) (reversing claim construction based on commercial embodiment, because infringement not determined on comparison with commercial embodiment of claimed invention).

As to Figure 11A, it is merely "one embodiment," not a "preferred embodiment." *See*, Appx120 at column 2, lines 45-47. The asserted patents do not use the term "preferred embodiment." Regardless, "it is well

established that patent drawings do not define the precise proportions of the elements and may not be relied on to show particular sizes if the specification is completely silent on the issue." *Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l*, 222 F.3d 951, 956 (Fed. Cir. 2000). Accordingly, the Court should reject Acufloor's arguments regarding FIG. 11 and commercial embodiments.

### G. Acufloor Waived Arguments Regarding Whether the District Court's Claim Construction is Correct.

When the "ordinary meaning" of a claim term does not resolve the parties' dispute, the court is required to issue a construction to determine the appropriate scope of the claim term. *O2 Micro Int'l Ltd. v. Beyond Innov. Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it."). Here, there was a fundamental dispute between the parties regarding the scope of the claim term "tile edge" or "edge" that needed to be resolved by the court. However, only Defendants proposed constructions of the disputed term. As noted by the district court, Acufloor urged the Court not to construe this term but to allow the jury to apply the terms' plain and ordinary meanings. Appx6.

In other words, Acufloor did not submit an alternative claim construction proposal. Thus, Acufloor merely argued in the district court

proceedings that they did not need to construe the claims and did not assert a claim construction. Acufloor's efforts to avoid proposing a meaningful claim construction is exemplified by the exchange between counsel for Acufloor and the district court during the Markman hearing. The district court probed Acufloor's counsel regarding the concept of "area" or "region" as pertains to the terms "corner" and "edge" trying to get Acufloor to explain how a person might decipher the claim term bounds. Appx1820-Appx1822. The court inquired: "So if you take your mouse and you set it back 3 inches from what you just said everybody would know would be the corner, do you still consider that area the corner?" Acufloor's response was less than helpful: "Depends on the size of the corner . . . If this were a one-by-one -- 1 foot by 1 foot tile, then you probably wouldn't consider that the corner." Appx1822. Acufloor failed to offer any meaningful construction, leaving only the expectation that the jury might figure it out.

Thus, Acufloor waived any right to assert a construction for "edge" by failing to propose an alternative construction to the district court and is limited to arguing the issue of whether the district court should have construed the term "edge". As this Court has previously held: "presenting proposed claim constructions which alter claim scope for the first time on appeal invokes the doctrine of waiver as to the new claim constructions."

*NTP, Inc. v. Resch. In Motion, Ltd.*, 418 F.3d 1282, 1296 (Fed. Cir. 2005); *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1346 (Fed. Cir. 2001) ("As it relates to claim construction, the doctrine [of waiver] has been applied to preclude a party from adopting a new claim construction position on appeal.").

Thus, the Court should disregard Acufloor's argument for a different construction of the term "edge" and should limit its review only to whether it was appropriate for the district court to issue any construction for the term "edge".

## II.    The District Court's Construction of the "Majority of an Area" Term Should be Affirmed.

Acufloor argues that its proposed construction of the "Majority of an Area" phrase is the more natural reading. Acufloor Brief at 32-33. Acufloor's proposal, however, renders meaningless the limitation amended into the claims by the patentees to overcome the prior art. It also disregards the patent prosecution history and common cannons of construction where ambiguities from language selected by patentees and not supported by the specification. Contrary to Acufloor's contentions, the district court's claim construction is the most natural reading of the "Majority of an Area" phrase that aligns with the specification, the prosecution history, that is supported

by the specification and provides any clarity to the claims. Accordingly, this Court should affirm the district court's construction of the "Majority of an Area" claim term.

### A. "Majority of an Area" Refers to the Ratio of Notch to Plastic in the Base

The parties set forth their proposed constructions for the "Majority of an Area" term in the Joint Claim Construction statement as follows:

| Term | Acufloor Proposal | EvenTile Proposal | Forpac Proposal |
|------|-------------------|-------------------|-----------------|
| the combination of the first notch and the second notch providing a majority of an area of tile-to-mortar-to-subfloor contact for the tile leveling device within the bounds of the base | The combination of the first notch and the second notch providing the majority of the tile-to-mortar-to-subfloor contact that exists within the bounds of the base. | the space created by the combination of the first notch and the second notch for providing the tile-to-mortar-to-subfloor contact comprising the majority of the area within the bounds of the base | The notches in the base collectively span an area that is larger than the solid portions of the base. |

Appx521.

The language as found in claims 1, 5, and 8 of the '274 Patent suffers from ambiguities and must be read in light of the specification and patent prosecution history. The phrase clearly compares the size of the "notches"

to something. Acufloor argues that the comparison is to other openings in the base, but nowhere are any other openings mentioned in the claim language or even anywhere in the '274 Patent specification.  Thus, Acufloor's reading is not even supported by the specification. Moreover, common cannons of claim construction puts the burden on a patentee to use language that is unambiguous. *See, e.g., Hoganas AB v. Dresser Industries, Inc.*, 9 F.3d 948, 951 (Fed. Cir.1993)("If Hoganas, who was responsible for drafting and prosecuting the patent, intended something different, it could have prevented this result through clearer drafting."); *Cf. Novo Nordisk A/S v. Becton Dickinson and Co.*, 2000 WL 294852 at *2 (S.D.N.Y. March 21, 2000) ("To the extent there exists any ambiguity as to the proper claim construction, the Federal Circuit has ruled, consistent with traditional canons of construction, that claims should be construed narrowly against the patent owner since it is the "party responsible for drafting and prosecuting the patent."") citing *Hoganas AB*, 9 F.3d at 951.

Moreover, this Court has held: "Where there is an equal choice between a broader and a narrower meaning of a claim, and there is an enabling disclosure that indicates that the applicant is at least entitled to a claim having the narrower meaning, we consider the notice function of the claim to be best served by adopting the narrower meaning." *Athletic*

*Alternatives*, 73 F.3d at 1581. Here, there is no enabling disclosure for Acufloor's proposed construction for a comparison of other openings in the spacer clip base, because no such other openings are disclosed in the patent specification. There is, however, support for "the notches in the base collectively span an area that is larger than the solid portions of the base", which compares the area of tile-to-mortar-to-subfloor contact to the total area within the bounds of the base. Thus, it was proper for the district court to adopt this construction.

The district court's claim construction was proper because it relied on and is supported by the intrinsic evidence, including the amendment and arguments in which Acufloor added the "Majority of an Area" limitation. Appx10. *See also*, Appx805, Appx807, and Appx821-Appx825. The district court specifically noted that Acufloor distinguished its device from the prior art because the claimed device allowed for a larger area of uninterrupted subfloor-to-mortar-to-tile contact. Appx10. Quoting Acufloor, the District Court acknowledged that the claimed design allows "more adhesive to penetrate the opening and extend over a greater surface area of the tiles" than the prior art. Appx10. Thus, the District Court chose Defendants' construction, namely, "the notches in the base collectively span an area that is larger than the solid portions of the base." Appx10.

Acufloor argues that this construction ignores the phrase "of tile-to-mortar-to-subfloor contact for the tile leveling device" altogether, but this is not true. The district court's construction gives meaning to the claim term as a whole.[5] If left with what Acufloor argues it the natural reading, the claim term is nothing but a tautology because the notches are the only places where tile-to-mortar-to-subfloor contact can occur, so definitionally, they will always provide the "majority" of that contact; the effect is that the patentees' claim amendment will not provide the intended limitation to overcome the prior art. This is demonstrated by the below picture (submitted in an exhibit to EvenTile's Claim Construction Brief), which illustrates several examples of clip bases having "notches" according to Acufloor's proposed construction. Appx1465-Appx1466.

---

[5] The Federal Circuit has held: "The preference for giving meaning to all terms, however, is not an inflexible rule that supersedes all other principles of claim construction . . . . As we have explained, "[c]laims must always be read in light of the specification." *SimpleAir, Inc. v. Sony Ericsson Mobile Communications AB*, 820 F.3d 419, 429 (Fed. Cir. 2016).



Appx1467.

The base in the top left is a recreation of the base of the claimed invention, recreated using the measurements of the base from the patent specification. Appx1465-Appx1467. The base example on the top right shows the "notches" being smaller. The bottom left base shows the "notches" smaller still, and the final base example shows the "notches" as small as seems practical that would still allow mortar penetration and allow for tile-to-mortar-to-subfloor contact. *Id.* But each of these examples demonstrate Acufloor's proposed construction of "the combination of the first notch and the second notch providing the majority of the tile-to-mortar-to-subfloor contact that exists within the bounds of the base" because the "notches" are the **only** feature providing **any** tile-to-mortar-to-

subfloor contact. *Id*. Thus, Acufloor's construction eliminates any meaningful limitation since, according to Acufloor's construction, the limitation will always be met.

This Court has held: "It is highly disfavored to construe terms in a way that renders them void, meaningless, or superfluous." *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 810 (Fed. Cir. 2021). As can be seen above, Acufloor's proposed construction does just that – it renders the term "void, meaningless, and superfluous".

Further, Acufloor's purported "natural" reading fails to inform a jury of the meaning imbued by Acufloor when arguing that limitation during prosecution. The district court's opinion recognizes that the patentees' arguments regarding this limitation during prosecution were not focused on whether the prior art's notches were smaller than its holes, but rather, that the "notches in the claimed device ... allowed for a larger area of uninterrupted subfloor-to-mortar-to-tile contact." Appx10. Thus, the differentiating factor, according to Acufloor itself, was to allocate a majority of surface area of the base structure to the open notches which allowed "more adhesive to penetrate the opening and extend over a greater surface area of the tiles than the prior art." Appx10 (quoting the March 25, 2020 Request for Continued Examination, Appx826). Given that "any

explanation, elaboration, or qualification presented by the inventor during patent examination is relevant,"[6] the district court's construction provides a jury with the much needed subtext that the patentees imbued this term with during prosecution.

Acufloor's proposed construction is also unfounded in view of the prosecution history of the '274 Patent. Specifically, in an Amendment submitted on March 25, 2020, the Patentee expressly amended the claims to recite the above referenced limitation in an attempt to overcome the prior art. Particularly, the Patentee argued the following:

> It is not possible that one of ordinary skill in the art before the filing date of the instant invention would have modified the base of Doda with the configuration of Psaila by extending the opening 129 all the way to the front portion of the base 116 for allowing more adhesive to penetrate the opening and extend over a greater surface area of the tiles as taught by Psaila..... Psaila discloses and teaches keeping any opening 129 of Doda or cut-outs 28 of Psaila away from the inside of the base 116 so the integrity of the spacer tabs is maintained.

Appx814-Appx815.

Thus, the patentees argued that the distinguishing feature of the invention compared to the prior art was not that the notches of the invention provide more tile-to-mortar-subfloor contact than the holes of

---

[6] *AstraZeneca AB v. Mylan Pharm. Inc.*, 19 F.4th 1325, 1335 (Fed. Cir. 2021).

the prior art, but rather, that the prior art bases required a majority of surface area to be devoted to solid plastic in order to retain structural integrity. "Psaila discloses and teaches keeping any opening 129 of Doda or cut-outs 28 of Psaila away from the inside of the base 116 so the integrity of the spacer tabs is maintained." Appx815. Thus, according to the patentees, the differentiating factor of the patentee's invention, and the feature highlighted by the "Majority of an Area" term, was that it allocated a majority of surface area of the base structure to the open notches while retaining structural integrity.

Significantly, prior to submitting March 25, 2020 Amendment, had failed to persuade the examiner and, during an Applicant-Initiated Interview, the examiner "suggested Applicant **focus on the size of each notch in relation to the size of the base**" and "suggested that amending the claim language **to better define the size of the notch** would further distinguish from the prior art." Appx750 (emphasis added).

In response, the patentee amended the "Majority of an Area" term into the pending claims and argued that the new claim language distinguished the invention from the prior art because the prior art lacked sufficient area to provide the claimed functionality of tile edge-to-mortar-

to-subfloor contact. Appx807; Appx814-Appx815.  The examiner then issued a Notice of Allowance on April 3, 2020. Appx831-Appx833.

In view thereof, Acufloor's proposed construction is inconsistent with the intrinsic evidence of the '274 Patent. The district court's construction, however, accurately reflects that which the patentee actually argued.

## III.   Conclusion and Relief Sought

For the foregoing reasons, Defendant-Appellee EvenTile, Inc. respectfully requests that the Court affirm the district court's claim construction order and deny Acufloor's appeal. Additionally, EvenTile respectfully reserves the right to apply to this Court for an award of fees and costs.

Dated: March 22, 2024                    /s/ *Perry S. Clegg*
                                         Perry S. Clegg
                                         *Attorney for Appellant*
                                         *Modern Font Applications LLC*

## Certificate of Compliance

The undersigned certifies under Fed. R. App. P. 32(a) and Federal Circuit Rule 32(a) that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) as modified by Federal Circuit Rule 32(a).

Exclusive of the Fed. R. App. p. 32(f) and Federal Circuit Rule 32(b) exempted portions of the brief—*i.e.*, cover page, certificate of interest, table of contents, table of citations, statement of related cases, statement regarding oral argument, signature bloc, addendum in initial appellant or petitioner brief with corresponding appendix pagination (judgment, order or decision in question, opinion, memorandum, or findings and conclusions support it and patents-in-suit), certificates of counsel, and proof of service —this brief contains 11,867 words, which is less than the 14,000 words for opening briefs under Federal Circuit Rule 32(a).

The brief was prepared in proportionally spaced typeface using Microsoft Word in 14-point Georgia font.  The undersigned relied on the word count feature of this word processing system as the basis for this certificate as permitted by Fed. R. App. P. 32(g)(1).

Dated: March 22, 2024                    /s/ *Perry S. Clegg*
                                         Perry S. Clegg
                                         *Attorney for Appellant*
                                         *Modern Font Applications LLC*

## Certificate of Service

I certify that, on March 22, 2024, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Federal Circuit using the CM/ECF System and served on all counsel of record via electronic mail.

Dated: March 22, 2024

/s/ *Perry S. Clegg*
Perry S. Clegg
*Attorney for Appellant*
*Modern Font Applications LLC*