## NO. 23-1887

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

**ACUFLOOR, LLC,**
*Plaintiff-Appellant,*

v.

**EVENTILE, INC., FORPAC, LLC,**
*Defendants-Appellees.*

### REPLY BRIEF OF PLAINTIFF-APPELLANT ACUFLOOR, INC.

**Appeal from the United States District Court for the Middle District of Florida, in No. 2:21-cv-00802-SPC-KCD, Judge Sheri Polster Chappell**

### HAYNES AND BOONE, LLP

John R. Emerson
Debra J. McComas
Caroline W. Fox
2801 N. Harwood St.
Suite 2300
Dallas, Texas 75201
Phone: (972) 651-5328

Angela M. Oliver
Adam L. Erickson
800 17th Street, NW
Suite 500
Washington, D.C. 20006
Phone: (202) 654-4552

### ATTORNEYS FOR PLAINTIFF-APPELLANT, ACUFLOOR, LLC.

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................... i

TABLE OF AUTHORITIES ............................................................ iii

ARGUMENT.................................................................................1

I.  The district court erred in construing the "Majority of an Area" limitation. ...................................................................................3

    A.  The district court's construction is inconsistent with the claim language.................................................................. 4

    B.  Acufloor's construction does not render the claim limitation meaningless or superfluous. ............................. 6

    C.  The prosecution history supports Acufloor's construction.................................................................... 8

    D.  The principle of construing claims to preserve validity under Section 112 does not apply here.............................12

II. The district court erred in construing "edge." ...........................14

    A.  The district court erred in adopting a construction of "edge" that contradicts the specification.........................15

    B.  The prosecution history does not support the district court's construction.........................................................18

        1.  Disclaimer requires a clear and unequivocal statement of exclusion.............................................18

        2.  The demonstrative video Acufloor submitted during the prosecution of the '274 Patent confirms that "edge" refers to a region rather than a line. .................... 20

        3.  Appellees and the district court misconstrue the prosecution history of the '857 Patent.................................... 24

C.     The plain and ordinary meaning of the term "edge" is not ambiguous..........................................................................29

D.     Extrinsic evidence, including expert testimony, supports the plain and ordinary meaning of the term "edge." ......................... 31

E.     Giving "edge" its plain meaning does not conflict with the district court's construction of "notch." .........................................32

III.     Acufloor did not waive its claim-construction arguments and has not presented a new claim construction on appeal.......................................33

CONCLUSION............................................................................... 35

CERTIFICATE OF COMPLIANCE ................................................... 37

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*01 Communique Lab., Inc. v. LogMeIn, Inc.*,
  687 F.3d 1292 (Fed. Cir. 2012) ........................................................ 28

*3M Innovative Props. Co. v. Avery Dennison Corp.*,
  350 F.3d 1365 (Fed. Cir. 2003) ........................................................ 12

*Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*,
  808 F.3d 1313 (Fed. Cir. 2015) ........................................................ 30

*Apple Inc. v. Voip-Pal.com, Inc.*,
  976 F.3d 1316 (Fed. Cir. 2020) ........................................................ 28

*Avid Tech., Inc. v. Harmonic, Inc.*,
  812 F.3d 1040 (Fed. Cir. 2016) ............................................. 18, 19, 32

*CollegeNet, Inc. v. ApplyYourself, Inc.*,
  418 F.3d 1225 (Fed. Cir. 2005) .......................................................... 7

*CSS Fitness, Inc. v. Brunswick Corp.*,
  288 F.3d 1359 (Fed. Cir. 2002) ................................................. 34, 35

*Cyntec Co., Ltd. v. Chilisin Elecs. Corp.*,
  84 F.4th 979 (Fed. Cir. 2023) .......................................................... 12

*Falko-Gunter Falkner v. Inglis*,
  448 F.3d 1357 (Fed. Cir. 2006) ........................................................ 13

*Fox Factory, Inc. v. SRAM, LLC*,
  944 F.3d 1366 (Fed. Cir. 2019) ........................................................ 28

*GPNE Corp. v. Apple Inc.*,
  830 F.3d 1365 (Fed. Cir. 2016) ........................................................ 35

*Hill-Rom Srvs., Inc. v. Stryker Corp.*,
  755 F.3d 1367 (Fed. Cir. 2014) .................................................... 7, 35

*Hockerson-Halberstadt, Inc. v. Avia Group International, Inc.*,
222 F.3d 951 (Fed. Cir. 2000) ................................................................ 17

*Interactive Gift Express, Inc. v. Compuserve Inc.*,
256 F.3d 1323 (Fed. Cir. 2001) ............................................................ 34

*K-fee Sys. GmbH v. Nespresso USA, Inc.*,
89 F.4th 915 (Fed. Cir. 2023) .............................................................. 35

*Markman v. Westview Instruments, Inc.*,
517 U.S. 370 (1996) ............................................................................. 29

*Medtronic, Inc. v. Teleflex Innovations S.À.R.L.*,
68 F.4th 1298 (Fed. Cir. 2023) ........................................................... 34

*Monsanto Co. v. Bayer Bioscience N.V.*,
363 F.3d 1235 (Fed. Cir. 2004) ........................................................... 24

*Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*,
30 F.4th 1339 (Fed. Cir. 2022) ..................................................... 29, 30

*NTP, Inc. v. Rsch. In Motion, Ltd.*,
418 F.3d 1282 (Fed. Cir. 2005) ........................................................... 34

*O2 Micro Int'l Ltd. v. Beyond Innov. Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008) ........................................................... 35

*Oatey Co. v. IPS Corp.*,
514 F.3d 1271 (Fed. Cir. 2008) ........................................................... 17

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc) ........................... 7, 13, 17, 19

*PODS, Inc. v. Porta Stor, Inc.*,
484 F.3d 1359 (Fed. Cir. 2007) ........................................................... 33

*Power-One, Inc. v. Artesyn Techs., Inc.*,
599 F.3d 1343 (Fed. Cir. 2010) ........................................................... 30

*Promptu Sys. Corp. v. Comcast Cable Commc'ns, LLC*,
92 F.4th 1384 (Fed. Cir. 2024) ........................................................... 10

*Trustees of Columbia Univ. v. Symantec Corp.*,
    811 F.3d 1359 (Fed. Cir. 2016) .............................................................. 19

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) ........................................................17, 32

# ARGUMENT

The district court's construction of the phrase "the combination of the first notch and the second notch providing a majority of an area of tile-to-mortar-to-subfloor contact for the tile leveling device within the bounds of the base" (the "Majority of an Area" limitation) changed its meaning.  Rather than requiring that the notches "provid[e] a majority *of an area of tile-to-mortar-to-subfloor contact* for the leveling device within the bounds of the base," as the claim states, the district court's construction requires that notches cover a majority *of the base*.  But the area of *the tile-to-mortar-to-subfloor-contact* is not the same as the *area of the base*, and the district court failed to cite any justification for adopting a construction that fundamentally alters the meaning of the claims.

Although the district court held that Acufloor's statements during prosecution dictated its construction, the only prosecution statement it cited in support of that conclusion did not even relate to the Majority of an Area limitation.  Instead, it addressed the alleged obviousness of altering the holes in the prior-art devices to make them notches.

Appellees similarly fail to identify any prosecution statement that supports the district court's construction.  They instead rely primarily on their incorrect assertion that construing the Majority of an Area limitation consistent with its plain meaning

would render the limitation superfluous.  But that argument rests on the incorrect premise that because the claims do not ***expressly recite*** openings other than notches, they cannot ***encompass*** devices that include other openings.  And the prosecution history confirms that Acufloor added the Majority of an Area limitation to distinguish prior-art devices that included openings other than notches—such as holes—that provided most of the mortar contact.

The district court's construction of "edge" similarly contradicts the term's plain meaning in the art and the intrinsic record.  Under the district court's construction, devices that the specification expressly states provide the claimed "edge-to-mortar" contact do not meet that limitation.  The district court and Appellees attempt to justify this result by asserting that during prosecution, Acufloor "repeatedly distinguished their invention from tile spacers in the prior art by showing that only their invention allowed for mortar contact all the way to the very edge of the tile."  Appx7.

But neither the district court nor Appellees cite any prosecution statement to that effect.  Instead, both the district court and Appellees rely primarily on isolated statements from demonstrative aids submitted during prosecution while ignoring the context of the arguments those aids supported.  Even on their own, those statements do not clearly and unequivocally indicate that Acufloor intended to restrict the term

"edge" to a single line. And properly viewing them in context reveals that they addressed entirely different concepts. Indeed, far from asserting that "only [its] invention allowed for mortar contact all the way to the very edge of the tile," Acufloor actually confirmed during prosecution that its own device provides the claimed "edge" contact despite ***not*** permitting mortar contact all the way to the "very edge" of the tile.

Because the district court's erroneous constructions of both limitations led to the Parties' stipulated judgment of non-infringement, that judgment must be vacated and the case remanded.

## I. The district court erred in construing the "Majority of an Area" limitation.

Appellees do not meaningfully contest that the district court's construction of the Majority of an Area limitation contradicts the claims' plain language. Instead, they incorrectly assert that the district court's construction is nevertheless appropriate because (1) adopting Acufloor's construction would allegedly render the limitation superfluous and (2) Acufloor allegedly distinguished prior art because the claimed device "allowed for a larger area of uninterrupted contact" than did the prior-art devices. FORPAC Br. 33–35; EvenTile Br. 55–64. Both arguments fail.

Because the district court lacked any basis to construe the Majority of an Area limitation in a manner that contradicts its plain meaning, the Court should remand

for a determination of infringement under a proper construction that gives effect to all of the claim language.

## A. The district court's construction is inconsistent with the claim language.

The district court's construction of the Majority of an Area limitation contradicts its plain meaning because it ignores the phrase "of tile-to-mortar-to-subfloor contact." The Majority of an Area limitation includes three elements: (1) the first and second notches, (2) an area of tile-to-mortar-to-subfloor contact, and (3) the bounds of the base. These elements are highlighted in the drawing below, provided by EvenTile's expert, Cameron Orr:



Appx1466 (cropped and annotated).

The plain language of the Majority of an Area limitation requires that the area of the notches (outlined in green) provide a majority of the area of tile-to-mortar-to-subfloor contact (highlighted in blue).  The devices depicted in the figures of the '274 Patent meet this limitation because their notches provide not only a majority of the area of tile-to-mortar-to-subfloor contact, but all of it.



Appx89, Appx117 (annotated).

5

The district court's strained reading of the limitation ignores its second element—"an area of ***tile-to-mortar-to-subfloor contact***"—and instead requires that the notches make up a majority of the area within the bounds of the base as a whole (red). *See* Appx11. In other words, under the district court's construction, the limitation is satisfied if the area of the notches exceeds the area of the solid portions of the base, regardless of how much of the area of tile-to-mortar-to-subfloor contact the notches provide. *See* Appx11.

As all parties agree, construing a claim in a manner that renders limitations superfluous is "highly disfavored." Opening Br. 33 (quoting *Wasica Fin. GmbH v. Cont'l Auto. Sys. Inc.*, 853 F.3d 1272, 1288 n.10 (Fed. Cir. 2017)); FORPAC Br. 34 (quoting *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 810 (Fed. Cir. 2021); EvenTile Br. 61 (same). The district court's construction does precisely that and is therefore incorrect.

### B. Acufloor's construction does not render the claim limitation meaningless or superfluous.

Appellees argue that it is Acufloor's construction that renders claim language "meaningless" and that the district court was correct to rewrite the claims as a result. FORPAC Br. 4, 34; EvenTile Br. 55. But their argument incorrectly assumes that because the claims do not ***expressly recite*** openings other than notches, the

claims cannot *encompass* devices with other openings.  *See* FORPAC Br. 4, 34; EvenTile Br. 55.

The claims of the '274 Patent recite a "tile leveling device . . . *comprising*" notches.  Appx123 ('274 Patent, 7:60–61) (emphasis added)).  "The transitional term 'comprising' is inclusive or open-ended and does not exclude additional, unrecited elements . . . ." *CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225, 1235 (Fed. Cir. 2005) (internal alterations omitted).  Therefore, the fact that the claims do not recite other openings does not mean that devices covered by the claims cannot include them.

Appellees also rely on the fact that the example embodiments in the specification lack openings other than notches.  But this Court has "expressly rejected the contention that . . . [a] patent must be construed as being limited" to the depicted embodiments. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc); *see also Hill-Rom Srvs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1381 (Fed. Cir. 2014).

Because the claims encompass devices that include openings other than notches, Appellees' arguments that "the notches are the only places where tile-to-mortar-to-subfloor contact can occur" and will therefore always provide the majority of that contact are incorrect.  FORPAC Br. 34; EvenTile Br. 59.

7

## C.    The prosecution history supports Acufloor's construction.

Indeed, the prosecution history confirms that Acufloor added the Majority of an Area limitation to distinguish prior-art devices that included openings other than notches that provided the majority of tile-to-mortar-to-subfloor contact within the bounds of their bases—namely, the Doda and Psaila devices. *See* Appx796. For example, Psaila, Figure 1 includes notches (outlined in green) that provide some of the tile-to-mortar-to-subfloor contact (blue) within the bounds of the device's base, but the device also includes holes that provide the majority of that contact:



Appx857 (Psaila, Fig. 1) (cropped and annotated).

The Doda device does not include any notches at all, and notches therefore provide ***none*** of that device's edge-to-mortar-to-subfloor contact:



Appx927 (Doda, Fig. 8) (cropped and annotated).  Accordingly, neither Doda nor Psaila meets the Majority of an Area limitation.

Appellees, like the district court, incorrectly contend that Acufloor instead added the Majority of an Area limitation to distinguish Doda and Psaila because the "notches in the claimed device . . . allowed for a larger area of uninterrupted subfloor-to-mortar-to-tile contact" than those devices.  FORPAC Br. 35; EvenTile Br. 61 (quoting Appx10).  But, like the district court, Appellees fail to cite any prosecution statements by Acufloor that support that conclusion.

Contrary to Appellees' assertions, Acufloor never argued that the "notches in the claimed device . . . allowed for a larger area of uninterrupted subfloor-to-mortar-to-tile contact" than the prior-art devices.  *See* Opening Br. 35–37.  Instead, the language that the *Markman* opinion and Appellees quote addressed the non-

9

obviousness of modifying Doda's holes to make them notches, as the examiner had

proposed:

> ***It is not possible that one of ordinary skill in the art*** before
> the filing date of the instant invention ***would have modified***
> ***the base of Doda with the configuration of Psaila by***
> ***extending the opening 129 all the way to the front portion***
> ***of base 116*** for allowing more adhesive to penetrate the
> opening and extend over a greater surface area of the tiles
> as taught by Psaila.

Appx814 (emphasis added).

Acufloor supported that argument by explaining that Psaila's spacer tabs teach

away from extending Psaila's notches towards the inside of the base.  Appx825.

FORPAC argues[1] that in doing so, Acufloor somehow indicated that "the feature

highlighted by the 'Majority of an Area' term, was that it allocated a majority of

---

[1] EvenTile appears to attempt to adopt and "incorporate by reference" FORPAC's brief (though it erroneously states that ***Acufloor*** incorporates FORPAC's brief, which Acufloor does not). EvenTile Br. 34 n.2.  Doing so would exceed EvenTile's word limit and is thus impermissible.  *See Promptu Sys. Corp. v. Comcast Cable Commc'ns, LLC*, 92 F.4th 1384, 1386 (Fed. Cir. 2024).  Further, in many places, EvenTile's brief repeats arguments from FORPAC's brief almost word-for-word without providing any indication of which content is duplicative, as Rule 28(j) requires. *Compare, e.g.*, EvenTile Br. 38–42 *with* FORPAC Br. 26–31.  EvenTile's attempted incorporation by reference, combined with its inclusion of duplicative arguments, makes it difficult to discern whether EvenTile's position is fully articulated in its own brief or in conjunction with FORPAC's.  Accordingly, Acufloor treats any arguments appearing only in FORPAC's brief as FORPAC's alone.

surface area of the base structure to the open notches while retaining structural integrity." *See* FORPAC Br. 36–37.

But the office-action response FORPAC cites does not make any comparison between the size of the notches and the surface area of the base structure. Appx802–829. Nor does the argument Appellees and the district court cite even mention the Majority of an Area limitation. Appx825–826. Indeed, Acufloor made the ***same argument*** before it added the Majority of an Area limitation to the claims. Appx1277–1283, Appx1285, Appx1295. Thus, on its face, the cited argument addressed whether an artisan would have found it obvious to combine Doda and Psaila to create a device that has the claimed notches at all—not whether it would have been obvious to create a device that satisfies the Majority of an Area limitation. As such, the argument does not justify rewriting the Majority of an Area limitation in the manner Appellees assert.

The Examiner's suggestion that "amending the claim language to better define the size of the notch would further distinguish from the prior art of record" also does not support the district court's construction, as EvenTile asserts. *See* EvenTile Br. 63 (citing Appx750). While Acufloor did add the Majority of an Area limitation in response to the Examiner's suggestion, the plain language of the limitation demonstrates that Acufloor chose to further define the size of the notches

11

in relation to *other openings* rather than "in relation to the *size of the base*," as the Examiner suggested. *See* Appx750, Appx807, Appx810, Appx812.

That Acufloor chose to amend the claims to recite that the notches provide most of the tile-to-mortar-to-subfloor contact within the bounds of the base rather than amending them to require that the notches cover most of the base's area as a whole is hardly surprising—the Majority of an Area limitation has a broader scope than the latter amendment but still distinguishes both Psaila and Doda. *See Cyntec Co., Ltd. v. Chilisin Elecs. Corp.*, 84 F.4th 979, 986 (Fed. Cir. 2023) ("Had the patent drafter intended to limit the claims . . . , narrower language could have been used in the claim.").

In any event, this Court has recognized that "prosecution history cannot be used to limit the scope of a claim unless the *applicant* took a position before the PTO." *3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1373 (Fed. Cir. 2003) (emphasis in original, internal alterations omitted). The fact that the Examiner recommended an amendment that Acufloor could have made but did not therefore cannot limit the claim scope.

## D. The principle of construing claims to preserve validity under Section 112 does not apply here.

EvenTile's argument that the Court should affirm the district court's construction to preserve enablement of the claims also fails. *See* EvenTile Br. 57–58.

As an initial matter, courts only apply the principle of construing to preserve validity where they "conclude[], after applying all the available tools of claim construction, that the claim is still ambiguous." *Phillips*, 415 F.3d at 1327 (citations omitted). Here, the claims are unambiguous.

Further, contrary to EvenTile's arguments, the specification's lack of any express comparison between the area of the notches and the area of other openings in the base does not prevent the Asserted Patents from enabling a leveling device with notches that provide most of its tile-to-mortar contact. *See* EvenTile Br. 58. As Appellees themselves point out, the specification's disclosed embodiments ***all*** meet this limitation because their notches provide all of the tile-to-mortar-to-subfloor contact within the bounds of their bases. *See* FORPAC Br. 34; EvenTile Br. 59. Further, "[a] patent need not teach, and preferably omits, what is well known in the art." *Falko-Gunter Falkner v. Inglis*, 448 F.3d 1357, 1365 (Fed. Cir. 2006). EvenTile presents no evidence that one of skill in the art could not have made a simple comparison between the area of notches and the area of other openings absent express guidance in the specification.

For all of these reasons, the Majority of an Area limitation should be construed consistent with its plain language to mean that the combination of the first notch and

the second notch provide the majority of the tile-to-mortar-to-subfloor contact that exists within the bounds of the base.

## II. The district court erred in construing "edge."

Under the district court's construction of "tile edge," devices that the '857 and '274 Patents expressly characterize as having notches that provide "edge-to-subfloor" contact would not meet that limitation.    Appx94, Appx122 (6:19 (describing device of Fig. 11A)).  Devices that Acufloor expressly stated provide the claimed contact during prosecution would also fall outside of the claims' scope.  *See* Appx760, Appx1080.  And Appellees' accused devices would not infringe because they position tiles' extreme edges over their bases in ***the same manner*** as the device in Figure 11A and the Acufloor commercial embodiment confirmed during prosecution to provide the claimed edge-to-mortar-to-subfloor contact.  *See* Appx1968.

Appellees attempt to justify this result by asserting that Acufloor repeatedly distinguished the prior art on the basis that only Acufloor's "invention allowed for mortar contact all the way to the very edge of the tile."  FORPAC Br. 27 (quoting Appx7).  But their sole support for that argument consists of isolated statements from demonstrative aids that Acufloor submitted during prosecution.  Properly viewing those statements in context of the arguments they supported demonstrates

14

that none of them addressed the placement of the "very edge" of the tile relative to the notches at all, let alone in a manner clear and unequivocal enough to support adopting a construction of "tile edge" that excludes the specification's sole depicted example of notches providing "edge-to-subfloor contact."

**A.    The district court erred in adopting a construction of "edge" that contradicts the specification.**

Despite complaining that the specification "does little to address the ambiguity of the term 'tile edge,'" Appellees ignore the specification's express example of a tile-leveling device with notches that provide the claimed tile "edge-to-subfloor contact" in Figure 11A.  FORPAC Br. 6.  Figure 11A's depiction of "edge-to-subfloor contact" conclusively demonstrates that the "tile edge" cannot be limited to the extreme edge of the tile.  *See* Appx89, Appx117 (Fig. 11A), Appx94, Appx122 (6:19 (describing device of Fig. 11A)).

Specifically, as shown in the annotated figure below, the device in Figure 11A includes a solid region between the notches and the vertical body of the device— highlighted in red below—where the extreme edge of the tile will rest when the device is in use:



Appx89, Appx117 (annotated).

If the Asserted Patents use "tile edge" to mean a single line at the extreme edge, as the district court found, the device pictured above does not meet the "tile edge-to-mortar-to-subfloor contact" and "edge-to-subfloor" limitations because, during use, the extreme edge of the tile will rest over the red region of the center portion of the base rather than the notch. Yet, the specification expressly states that the base of the device depicted in Figure 11A provides the claimed "edge-to-subfloor contact due to the notches." Appx94 ('857 patent, 6:19), Appx122 ('274 Patent, 6:19); *see also* Opening Br. 11, 43–47. Thus, far from failing to address any ambiguity about whether the claims use the term "edge" to refer to a single line, the specification conclusively establishes that they do not.

The patent specification is the "single best guide to the meaning of a disputed term," *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996), and should be "the primary basis for construing the claims," *Phillips*, 415 F.3d at 1315. Appellees attempt to discount the significance of Figure 11A and the specification's accompanying description by citing *Hockerson-Halberstadt, Inc. v. Avia Group International, Inc.*, 222 F.3d 951, 956 (Fed. Cir. 2000). FORPAC Br. 33; EvenTile Br. 53. But for the reasons explained in Acufloor's Opening Brief, which neither Appellee responded to, *Hockerson-Halberstadt* does not stand for the proposition that courts cannot rely on figures to interpret features that the specification expressly states they depict and does not apply here. *See* Opening Br. 45–47.

Further, although the specification does not expressly characterize the embodiment in Figure 11A as a "preferred embodiment," the figure represents the specification's *only* depiction of the base of an embodiment that it expressly states provides the claimed "edge-to-subfloor contact." "[W]here claims can reasonably [be] interpreted to include a specific embodiment, it is incorrect to construe the claims to exclude that embodiment, absent probative evidence on the contrary." *Oatey Co. v. IPS Corp.,* 514 F.3d 1271, 1277 (Fed. Cir. 2008). The district court erred in construing "tile edge" to exclude the embodiment in Figure 11A.

**B.    The prosecution history does not support the district court's construction.**

The district court's sole explanation for its decision to construe the claims in a manner that contradicts the specification was that, during prosecution, Acufloor distinguished "prior art by showing that only [Acufloor's] invention allowed for mortar contact all the way to the very edge of the tile."  Appx7.  But none of the statements it cites even addressed the tiles' placement relative to the notches, let alone in a manner sufficient to trump the specification's clear guidance.  Opening Br. 51–59.  Appellees cite the same statements but, like the district court, ignore their context and, as a result, misconstrue them in the same way the district court did. Simply put, Acufloor never argued during prosecution that "tile edge-to-mortar-to-subfloor contact" requires that the direct mortar-to-subfloor contact reach the "very edge of the tile."

**1.    Disclaimer requires a clear and unequivocal statement of exclusion.**

"When the prosecution history is used solely to support a conclusion of patentee disclaimer, the standard for justifying the conclusion is a high one." *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016).  Other prosecution statements, as part of the intrinsic record, may "provide[] evidence of how the PTO and the inventor understood the patent," but "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than

18

the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Phillips*, 415 F.3d at 1317. Accordingly, for a prosecution statement to narrow the scope of the claim from the full scope of its ordinary and customary meaning in light of the intrinsic record as a whole, "the alleged disavowing actions or statements made during prosecution [must] be both clear and unmistakable." *Avid Tech.*, 812 F.3d at 1045.

Contrary to EvenTile's suggestions, *Trustees of Columbia University v. Symantec Corporation* does not alter these fundamental principles. *See* EvenTile Br. 35 (citing 811 F.3d 1359, 1364 (Fed. Cir. 2016)). Instead, that case held only that clear and unequivocal redefinitions or disavowals need not be ***express***. *Trustees of Columbia Univ.*, 811 F.3d at 1364.

Here, the claims' plain language, the specification, and the prosecution history all confirm that the claims use "edge" to refer to a region rather than a line, and Appellees fail to identify any clear and unequivocal disclaimer—explicit or implicit—that narrows the scope of the term from that plain meaning. *See* Opening Br. 42–59.

> **2.    The demonstrative video Acufloor submitted during the prosecution of the '274 Patent confirms that "edge" refers to a region rather than a line.**

The prosecution history of the '274 Patent confirms that "tile edge" cannot be restricted to a single line.  The district court and Appellees both focus their arguments about the '274 Patent's prosecution on a demonstrative video that Acufloor submitted in response to the Examiner's rejection of the claims over the combination of Doda and Psaila.  *See* Appx7–8 (citing Appx1080); FORPAC Br. 8–9, 29; EvenTile Br. 40–41.  Specifically, the district court premised its construction of "tile edge" on its misconception that the video sought to distinguish the claimed device from Doda and Psaila based on the ***position*** of the claimed notches.  Appx7 (citing Appx1086–1087).

But Acufloor made no such argument.  Instead, Acufloor distinguished Doda because the ***shape*** of the claimed notches contrasted with Doda's closed openings.  *See* Opening Br. 51–55 (citing Appx1284–1296; Appx1080–1086).  Specifically, Acufloor argued that Doda does not provide the ***type*** of "tile edge-to-mortar-to-subfloor contact" claimed because Doda's "openings 129 . . . push out mortar such that 'transverse member sections adhere to the subsurface or floor and the tiles get adhered to the transverse member' and do not penetrate the base portion."  Appx1289–1290 (quoting Appx930).  It further argued that Psaila teaches away from

modifying Doda's holes to make them notches.  Appx1285.  And the accompanying video demonstrated that "[t]here is a tremendous advantage to notches" over other openings like Doda's.  Appx1084.

EvenTile concedes that Acufloor's arguments in the video focused on the shape of the notches rather than their placement, arguing that the video "sought to distinguish the tile spacer clip base openings of the prior art from the openings (i.e., 'notches')" of the claimed device and could not have done so if "notch" did not require an opening that reaches the very edge of the base.  EvenTile Br. 24. Nevertheless, Appellees repeat the district court's erroneous conclusion that the video also distinguished the prior art based on the thickness of the center portion of the bases.  FORPAC Br. 30; EvenTile Br. 40–41.  But Appellees fail to cite any clear and unequivocal statement—or indeed, any statement at all—about the placement of the notches in the video, and no such statement exists.

In fact, FORPAC admits that Acufloor could not have distinguished the prior art on that basis because any "distinction between the mortar placement of the 'Bunch Device' (the patentee's device) and the prior art is miniscule, if it exists at all."  FORPAC Br. 9.  This is shown in the annotated screenshot from the video below:



Appx1087 (annotated).

Although the video states that Acufloor's device has "the only edge to mortar to subfloor direct contact" of the three prior art devices, it is clear in context that this statement referred not to the placement of the notches in the Acufloor device, but rather to the fact that only notches can provide the type of mortar contact claimed. *See* Opening Br. 52–53; Appx1084–1086. That is because, when spacers with notches are correctly installed, their unique shape prevents them from pushing mortar out of the way on installation like the barrier in front of Doda's holes would and thereby encourages more mortar into the notch to support the edge area. *See* Opening Br. 52–53; Appx1084–1086.

That Acufloor intended to distinguish Doda and Psaila based on the shape, rather than the placement, of the notches is further confirmed by the fact that Acufloor never disputed that the Examiner's proposed combination of Doda and Psaila, which includes notches spaced just as far apart as Doda's closed openings, would provide edge-to-mortar-to-subfloor contact. Appx805–829; Appx1284–1296. Instead, Acufloor argued only that one of skill in the art would not have combined Doda with Psaila to create the combined device at all and ultimately added the Majority of an Area limitation to overcome the rejection. Appx805–829; Appx1284–1296.

The video goes on to conclusively refute the district court's conclusion that Acufloor intended to distinguish the prior art "by showing that only [Acufloor's] invention allowed for mortar contact all the way to the very edge of the tile" by characterizing an Acufloor device that ***does not*** provide mortar contact at the tile's "very edge" as providing the claimed edge-to-mortar-to-subfloor contact:



Appx1080.

Appellees characterize this statement as a "red herring" because other, unshown Acufloor devices may have a different body thickness than the one used in Acufloor's video.  FORPAC Br. 32; EvenTile Br. 51–52.  But the existence of other commercial embodiments that Acufloor did not raise during prosecution is not relevant and cannot diminish the significance of Acufloor's express prosecution statement that the particular embodiment shown above provides the claimed contact.  *See, e.g., Monsanto Co. v. Bayer Bioscience N.V.*, 363 F.3d 1235, 1245–47 (Fed. Cir. 2004) (reversing summary judgment of non-infringement in part because the district court's narrow claim construction contradicted the patentee's prosecution statements indicating that the relevant term was not so limited).

Thus, not only does the prosecution history of the '274 Patent fail to support the district court's construction, but it directly contradicts it.

### 3.    Appellees and the district court misconstrue the prosecution history of the '857 Patent.

The prosecution history of the '857 Patent also does not support the district court's construction of "tile edge."  The district court only cited one page of the '857 Patent's prosecution history to support its construction of edge—an annotated figure from the Hoffman prior-art reference that Acufloor submitted as an exhibit to its response to the Examiner's rejection of the claims over the combination of Doda

and Hoffman.  Appellees assert that Acufloor submitted the annotated figure, shown

below, "to demonstrate that the prior art precluded 'edge-to-subfloor contact'

because the 'edge' of the tile would rest on a small strip of plastic, instead of being

exposed to the subfloor within the prior art notch":



FORPAC Br. 6-7 (citing Appx1052).  According to Appellees, the annotation

pointing to the inner lip of the base in Hoffman's Figure 16, which reads "Edge of

tile rests here.  No edge-to-subfloor contact," acts as an "express disavowal" of any

meaning of "tile edge" not restricted to a single line.  *See* FORPAC Br. 26, 28–29;

EvenTile Br. 38, 41–42.

But even in isolation, the annotation does not unequivocally indicate that "if

the edge of the tile were to rest on the center of the clip, there could be no 'edge-to-

subfloor contact,'" as Appellees assert.  FORPAC Br. 28–29; EvenTile Br. 41–42.

Nor does it speak at all to whether the "edge" is a line or a region.

And Appellees do not even attempt to square their interpretation of the figure

with the arguments it supported, neither of which had anything to do with the

spacing of the notches shown in Hoffman's Figure 16.  Acufloor submitted the

annotated figure as Exhibit B to its response to the Examiner's rejection of the claims

over the combination of Doda and Hoffman's Figure 16.  *See* Appx714; Appx1052.

Hoffman's Figure 16 depicts a plate of a tile-leveling device that includes (1) screw

holes 1612 for securing the plate to a wall or ceiling, (2) grooves 1618 for receiving

adhesive material for securing a tile to the plate, and (3) outwardly extending bars

1610 that the Examiner asserted formed notches.  *See* Appx1208–1211.

Acufloor's response to the rejection did not address whether the notches

between Hoffman's outwardly extending bars 1610 could provide tile edge-to-

subfloor contact at all.  Instead, it addressed only whether Hoffman's ***grooves 1618***

could provide that contact.  Appx714.  Specifically, Acufloor argued that Hoffman's

grooves 1618 do not provide edge-to-subfloor contact because they (1) extend to the

sides rather than the front and back of Hoffman's base and (2) do not penetrate the

base.  The office-action response refers to the annotated figure Appellees rely on

only once: to illustrate these arguments and what it characterized as "Hoffman's edge-to-groove contact." Appx714.

Properly viewing the annotated figure in the context of the arguments it supported makes clear that Acufloor did not intend for the figure to illustrate that Hoffman's notches could not provide edge-to-subfloor contact because the "very" edge of the tile would not rest over them. In fact, the figure had nothing to do with the notches at all, but instead related to the fact that grooves 1612 could not provide edge-to-subfloor contact. *See* Appx714; Appx1052.

The only other part of the '857 Patent prosecution history that Appellees relied on to support their construction of "edge" in the district court was Acufloor's statement in a later office-action response that Hoffman's screw holes 1618 would be about one-quarter inch in diameter. FORPAC cited this statement to "give perspective as to the width of plastic" that the annotated figure just discussed allegedly indicated would interfere with edge-to-subfloor contact. Appx979 n.25. But as already explained, the annotated figure had nothing to do with the thickness of the center portion of Hoffman's base or how much of it the tile edge would contact. And Acufloor's statements about the size of the screw holes also addressed an entirely different concept—that the Hoffman device is so large that it would never

be used in flooring applications and therefore would not provide mortar-to-***subfloor*** contact of any kind.  Appx1153–1154.

FORPAC also newly asserts in its Statement of the Case that Acufloor's arguments about the size of Hoffman's base relative to that of devices used in flooring applications create an "implication" that the claims require that the center portion of the base be no larger than the tile joint.  FORPAC Br. 7–8.  Because FORPAC failed to raise that argument before the district court, and indeed, fails to include it in its Argument here, it has forfeited the argument.  *See, e.g.*, *Apple Inc. v. Voip-Pal.com, Inc.*, 976 F.3d 1316, 1324 (Fed. Cir. 2020); *Fox Factory, Inc. v. SRAM, LLC,* 944 F.3d 1366, 1379 (Fed. Cir. 2019).

Even if it had not, the arguments FORPAC cites do not constitute a clear and an unequivocal disclaimer that would justify adopting a construction of "edge" that contradicts the specification.  Acufloor's discussion of Hoffman's dimensions did not relate to how much of the tile must lie directly over the subfloor for "edge-to-subfloor contact" to exist or seek to distinguish Hoffman on that basis.  *See* Appx1153–1154, Appx1190–1192.  Instead, Acufloor raised Hoffman's size to demonstrate that Hoffman, which is many times the size of Acufloor's device, is so large that it would never be used in flooring applications and therefore would not provide mortar-to-***subfloor*** contact of any kind.  *See* Appx1153–1154; *see also 01*

*Communique Lab., Inc. v. LogMeIn, Inc.,* 687 F.3d 1292, 1298 (Fed. Cir. 2012) (rejecting district court's finding of disclaimer when relevant statements "addressed another point entirely").

In sum, nothing in the prosecution history supports construing "edge" in a manner that contradicts both the specification and Acufloor's express prosecution statements that its own devices provide "edge-to-mortar-to-subfloor contact" despite not permitting the "very edge" of the tile to rest directly on the mortar.

### C.    The plain and ordinary meaning of the term "edge" is not ambiguous.

Appellees' argument that adopting the plain meaning of "edge" would inject impermissible ambiguity into the claims also lacks merit. *See* EvenTile Br. 44–46; FORPAC Br. 22. "Edge" is not a complex term. A jury is well equipped to determine if a tile-leveling device permits mortar to contact the "edge" of the tile. In fact, deciding such factual issues is exactly what a jury is for. *See, e.g., Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 387 (1996).

This Court has repeatedly held that claims need not define their scope "with mathematical precision." *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1347 (Fed. Cir. 2022). Accordingly, a claim term that uses approximate or relative terminology does not render the claim indefinite so long as a person of ordinary skill in the art could determine the claim's scope with reasonable certainty.

*Id.* Likewise, a claim construction that uses terms of degree does not necessarily render the claims indefinite or improperly delegate claim construction to the jury. *See, e.g.*, *Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1348 (Fed. Cir. 2010) (rejecting an argument that the terms "adapted to" and "near" in the district court's construction of a claim term impermissibly "left the jury free to make its own determination as to the claims' scope"). Accordingly, this Court has affirmed claim constructions of terms like "end" or "near" to refer to regions. *See, e.g.*, *Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1319 (Fed. Cir. 2015) ("[T]he district court properly construed 'proximate end' as the 'extreme or last *part* lengthwise.'") (emphasis added); *Power-One, Inc.*, 599 F.3d at 1348–49 (holding that the term "near" in the district court's construction provided sufficient guidance to the jury because the specification demonstrated that "near" meant "close to or at").

One of skill in the art would have no problem determining whether a tile-leveling device permits mortar contact at the edge of a tile, particularly in light of the examples provided in Figure 11A and in the prosecution history. Appx89; Appx1080. Accordingly, giving the term "edge" the full scope of its plain meaning would neither render the claims indefinite nor impermissibly delegate claim construction to the jury.

**D.    Extrinsic evidence, including expert testimony, supports the plain and ordinary meaning of the term "edge."**

The extrinsic evidence also confirms that the Asserted Patents use the term edge to refer to a region rather than a line. Opening Br. 49–50. Acufloor's expert explained that the purpose of the claimed edge-to-mortar-to-subfloor contact—to prevent breakage—makes clear that "edge" must include an area or region because it is illogical for mortar to "support" a one-dimensional line and for a line to "break." *See* Appx644–645; Opening Br. 49. EvenTile's witnesses did not rebut this testimony.

EvenTile's expert witness, Mr. Orr,[2] bases his testimony that "[a] POSITA would understand that a tile edge is a line where two plane faces of a tile intersect" on his assertion that "CAD software" for designing small plastic parts "defines edges as lines that can be referenced for important features and dimensions." Appx1421. But the disputed term is "tile edge," not the "edge" of a small plastic part or a software rendering of one. Therefore, Mr. Orr's is of limited relevance.

EvenTile's fact witness, Mr. Perillo, admits in his declaration that he had not seen or reviewed the Asserted Patents before signing his declaration. Appx1415.

---

[2] EvenTile incorrectly states that Mr. Orr is Acufloor's expert witness. EvenTile Br. 50.

Because the specification is the "single best guide" to the claims' meaning, Mr. Perillo's testimony is also of little value. *Vitronics*, 90 F.3d at 1582.

EvenTile correctly points out that this Court reviews district courts' evaluation of extrinsic evidence for clear error. *See* EvenTile Br. 48–49 (citing *Teva Pharms. USA, Inc., v. Sandoz, Inc.*, 574 U.S. 318, 332–33 (2015)). But here, the district court did not make any determinations about the extrinsic evidence because it based its construction solely on its erroneous finding of disclaimer. *See* Appx6–8. Therefore, the clear-error standard does not apply. *Avid Tech.*, 812 F.3d at 1044–45. In any event, this Court need not reach the extrinsic evidence because, for the reasons already described, the intrinsic evidence unambiguously demonstrates that the Asserted Patents use the term "edge" to refer to a region rather than a line. *See, e.g.*, *Vitronics*, 90 F.3d at 1583 ("[I]t is improper to rely on extrinsic evidence" if intrinsic evidence alone resolves ambiguity.).

### E.    Giving "edge" its plain meaning does not conflict with the district court's construction of "notch."

The Parties agree that the term "edge" can have different meanings in different contexts. *See* FORPAC Br. 33; EvenTile Br. 44. For all of the reasons explained, the intrinsic record makes clear that the Asserted Patents use the term "tile edge" to refer to a region. But that context does not apply to the "edge of the base" of the tile-leveling device. Therefore, contrary to EvenTile's suggestions, the

district court's use of the term "edge" to refer to the border of the leveling device's base does not contradict permitting the term "tile edge" to encompass a region. *See* EvenTile Br. 47–48.

The "presumption that the same terms appearing in different portions of the claims should be given the same meaning" does not apply here because the term "edge of the base" does not appear in the claims themselves—only in the district court's construction. *See PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1366 (Fed. Cir. 2007). And even if the presumption did apply, the differing contexts surrounding the term "tile edge" and the district court's construction of notch would rebut that presumption.

## III. Acufloor did not waive its claim-construction arguments and has not presented a new claim construction on appeal.

Acufloor has argued from the outset of claim-construction proceedings in the district court that "the patents use the term 'edge' to refer to a region or area, not a single line." Appx584; *see also, e.g.,* Appx521, Appx584–589, Appx1688–1709; Appx1820. Nevertheless, Appellees assert that Acufloor somehow waived its ability to contest the correctness of the district court's construction of "tile edge" as a line because Acufloor urged the district court to give the term the full scope of its plain meaning rather than construing it. FORPAC Br. 17, 22; EvenTile Br. 53–55.

This argument is incorrect. A party preserves an issue for appeal "so long as it can be said that the tribunal was fairly put on notice as to the substance of the issue." *Medtronic, Inc. v. Teleflex Innovations S.À.R.L.*, 68 F.4th 1298, 1305 (Fed. Cir. 2023) (quotations omitted). Here, the *Markman* Order expressly acknowledges the district court's awareness that "Acufloor argues 'corner' and 'edge' are regions of a tile." Appx6. Therefore, Acufloor has not forfeited its argument that the district court erred in instead restricting "tile edge" to a line.

None of the case law Appellees cite support their contrary position. *See* FORPAC Br. 22. Instead, those cases describe scenarios in which parties either did not present a construction before the district court and then argued for construction on appeal, *see NTP, Inc. v. Rsch. In Motion, Ltd.*, 418 F.3d 1282, 1296 (Fed. Cir. 2005), or changed their claim construction position on appeal, *see CSS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1370 (Fed. Cir. 2002); *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1346 (Fed. Cir. 2001). Neither situation applies here.

Appellees cite no case law to support their novel view that, when a party argues that a term be given its plain meaning during *Markman*, it cannot contest the merits of the opposing party's construction on appeal. On the contrary, this Court has routinely vacated incorrect claim constructions even in the absence of a

competing construction from the appealing party. *See, e.g.*, *CSS Fitness*, 288 F.3d at 1346–48; *Hill-Rom*, 755 F.3d at 1371–75; *K-fee Sys. GmbH v. Nespresso USA, Inc.*, 89 F.4th 915, 924 (Fed. Cir. 2023).

Appellees' suggestion that giving the term "tile edge" its plain meaning would violate *O2 Micro International Ltd. v. Beyond Innovation Technology Co.* is also incorrect. *See* FORPAC Br. 17; EvenTile Br. 53 (citing 521 F.3d 1351, 1362 (Fed. Cir. 2008)). As FORPAC acknowledges, *O2 Micro* does not provide that "a court must construe every term, or that the 'ordinary meaning' is never appropriate." FORPAC Br. 17. Instead, it requires only that the district court resolve the parties' disputes about the scope of the claims. *GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1372 (Fed. Cir. 2016).

Here, as the district court recognized, the parties dispute whether the term "tile edge" should be restricted to a line. Appx6–7. Simply rejecting Appellees' overly restrictive construction would resolve this dispute. Accordingly, no further construction of "tile edge" is required.

## CONCLUSION

For these reasons, Acufloor requests that the Court vacate the district court's judgment and remand for further proceedings under the correct constructions of the Majority of an Area limitation and "tile edge."

Respectfully Submitted,

**HAYNES AND BOONE, LLP**

*/s/ John R. Emerson*

John R. Emerson
Debra J. McComas
Caroline W. Fox
2801 N. Harwood St., Suite 2300
Dallas, Texas 75201
Phone: (214) 651-5328
*Russ.Emerson@haynesboone.com*
*Debbie.McComas@haynesboone.com*
*Caroline.Fox@haynesboone.com*

Angela M. Oliver
Adam L. Erickson
800 17th Street NW, Suite 500
Washington, D.C. 20006
Phone: (202) 654-4552
*Angela.Oliver@haynesboone.com*
*Adam.Erickson@haynesboone.com*

**Attorneys for Plaintiff-Appellant,
Acufloor, LLC**

**CERTIFICATE OF COMPLIANCE**

1.      This brief complies with the type-volume limitation of Fed. Cir. R. 32(b)(1) because:

■      this brief contains **6,996** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

2.      This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because:

■      this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Equity font.

*/s/ John R. Emerson*
John R. Emerson